35 F.3d 556
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Foy MILLER, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor; Omar Mining Company,
Respondents.
 No. 93-2217.
 United States Court of Appeals, Fourth Circuit.
 Argued July 14, 1994.
Decided Sept. 6, 1994.
 
 On Petition for Review of an Order of the Benefits Review Board. (92-634-BLA)
 George D. Blizzard, II, Shaffer & Shaffer, Madison, W.Va., for petitioner.
 Douglas Allan Smoot, Jackson & Kelly, Charleston, W.Va., for respondents.
 On Brief: Anthony J. Cicconi, Shaffer & Shaffer, Madison, W.Va., for petitioner.
 Ben.Rev.Bd.
 REMANDED.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Foy Miller petitions for review of the denial of his black lung claim. We remand the claim for reconsideration.
 
 I.
 
 2
 Miller was born January 5, 1948. He worked in the mines for sixteen years. He quit in November 1986 because of breathing and heart problems. He was awarded social security disability in March 1987. He began smoking (1 1/2 to 2 packs a day) at age ten, and he continued to do so until 1990. He suffers from asthma and emphysema and has twice had polyps removed from his nose. He takes medication for his asthma. Along with his breathing problems, he has had hypertension and tachycardia. He lost his right index finger in a punch press and his spleen and a kidney in a 1971 automobile accident.
 
 II.
 
 3
 Miller filed a claim for black lung benefits on April 11, 1988. He did not make a timely request for a hearing when the claim was initially denied, but he did request modification before a year elapsed from the denial. 20 C.F.R. Sec. 725.310; see Jessee v. Director, OWCP, 5 F.3d 723, 725 (4th Cir.1993). The claim was again denied, and Miller requested a hearing before an administrative law judge (ALJ). The hearing was held on July 29, 1991.
 
 
 4
 The ALJ issued his decision on November 27, 1991. The record before him contained fourteen interpretations of four x-rays. The most recent x-ray was read as positive and negative by equally qualified readers, while the second most recent was read as positive by a single reader. The ALJ stated, "On this basis, and in addition, resolving all doubts in favor of the miner, I find pneumoconiosis to have been established by a preponderance of the x-ray evidence."[1] Because Miller worked more than ten years in the mines, he was entitled to the rebuttable presumption (20 C.F.R. Sec. 718.203(b)) that the pneumoconiosis arose from his coal mine employment. There was no rebuttal evidence, so the presumption stood.
 
 
 5
 Next, the ALJ found that a preponderance of the pulmonary function tests established total disability under Sec. 718.204(c)(1). However, the ALJ looked to physicians' reports and determined that there was "contrary probative evidence so as to negate a finding of total disability due to pneumoconiosis." The ALJ therefore denied benefits.
 
 
 6
 The items of "contrary probative evidence" relied on by the ALJ were the opinions of Doctors Zaldivar, Castle, and Fino.[2] Of these three, only Dr. Zaldivar examined the claimant. Dr. Zaldivar found, and the other two repeated, that Miller's respiratory problem was solely attributable to asthma. Dr. Zaldivar also opined that, if Miller took larger doses of asthma medication, he would be able to do his usual coal mine work. Dr. Zaldivar read an x-ray as negative, and, contrary to the ALJ's finding, he asserted that Miller does not have pneumoconiosis.
 
 
 7
 The Benefits Review Board (BRB) affirmed, though it noted that the ALJ had not made a finding as to "total disability" under Sec. 718.204(c) and then applied the causation test of Sec. 718.204(b). Miller has petitioned this court for review.
 
 III.
 
 8
 The permanent regulations at 20 C.F.R. Part 718 apply to this claim. The miner must prove all of the elements of his claim of entitlement by a preponderance of the evidence. Director, OWCP v. Greenwich Collieries, 114 S.Ct. 2251 (1994). He must show (i)that he has pneumoconiosis, (ii)that his pneumoconiosis arose from coal mine employment, and (iii)that he is totally disabled "due to" the disease. This case involves only the final one of these elements. We review the decision below to assure that it is consistent with law and the ALJ's factual findings are supported by substantial evidence. Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir.1984).
 
 A.
 
 9
 Benefits should be awarded if the claimant is totally disabled "due to" pneumoconiosis. Sec. 718.204(a). "Due to" means that pneumoconiosis, as broadly defined at Sec. 718.201, "prevents or prevented" the miner from performing his usual coal mine work or comparable gainful employment. Sec. 718.204(b). The miner need not show that his pneumoconiosis is disabling in and of itself, or even that it "significantly" or "substantially" impairs him. If pneumoconiosis is a "contributing cause" of his disability, he has proved his case. Robinson v. Pickands Mather & Co., 914 F.2d 35 (4th Cir.1990); Scott v. Mason Coal Co., 14 BLR 1-37 (BRB 1990) (en banc).[3] Miller first argues that, having found total disability through pulmonary function tests under Sec. 718.204(c)(1), the ALJ was precluded from ultimately finding otherwise. Subsection(c) begins, "In the absence of contrary probative evidence, evidence which meets the standards of either paragraph (c)(1), (2), (3), (4) or (5) of this section shall establish a miner's total disability." Thus, Miller is wrong to suggest that qualifying under any of the Sec. 718.204(c) subsections is the end of the inquiry. On the other hand, there is an inquiry to be made under Sec. 718.204(c), but it involves only the "total disability" question. Our review of the ALJ's decision shows that this inquiry was not made here.
 
 
 10
 The ALJ's terse conclusion is simply that "the medical opinion evidence constitutes sufficient contrary probative evidence so as to negate a finding of total disability due to pneumoconiosis by the ventilatory study evidence." (emphasis supplied). By injecting causation into the subsection(c) analysis, the ALJ failed to make a finding on the ultimate issue under (c), and may have, as a practical matter, resurrected Wilburn 's "in and of itself" standard. See note supra.
 
 
 11
 The BRB recognized that the ALJ had failed to make distinct findings under subsections(b) and (c), but it affirmed nonetheless, on reasoning as hazy as the ALJ's:
 
 
 12
 The administrative law judge could properly credit the medical opinions of Drs.Zaldivar, Fino and Castle, who concluded in detail that claimant was disabled from asthma unrelated to his coal mine employment, and that, if treated, this disease would not prevent claimant from returning to his usual coal mine employment....
 
 
 13
 In addition, inasmuch as we affirm the administrative law judge's finding that the evidence was insufficient to establish total disability due to pneumoconiosis under Section 718.204(b), we decline to address claimant's argument with respect to the administrative law judge's failure to apply the proper standard of causation under Section 718.204(b). See Robinson v. Pickands Mather & Co., 914 F.2d 35, 14 BLR 2-68 (4th Cir.1990); Scott[ v. Mason Coal Co., 14 BLR 1-37 (1990) ]. Similarly, we decline to reach any error alleged with respect to the administrative law judge's disability findings under Section 718.204(c).
 
 
 14
 There are several errors in this analysis. First of all, the BRB seems to concede that Miller is "disabled from asthma"--a finding that would trigger Robinson "contributing cause" analysis--but it then retreats to suggest that the asthma would not be disabling if treated with the regimen prescribed by the three credited physicians. We still lack a square finding concerning "total disability" under Sec. 718.204(c). The final paragraph first posits a finding that was not made--under subsection(b)--then "affirms" it, and then wondrously concludes that affirmance renders irrelevant whether the law for making the finding was followed. In conclusion, the BRB finds no reason why it should review the ALJ's "findings" under (c).
 
 
 15
 This will not do. This claim must be remanded for proper consideration.
 
 B.
 
 16
 The record strongly suggests that Miller is "totally disabled" from a whole-man standpoint--at least the Social Security Administration thinks so. The respondents' position is that, absent his numerous nonrespiratory impairments, and with proper asthma medication, Miller would be perfectly capable of working in the mines.
 
 
 17
 Our study of the regulations leaves us with some question whether Sec. 718.204(c)'s "total disability" to which pneumoconiosis contributes must be simply whole-man disability or a self-sufficient pulmonary or respiratory disability. Though this distinction was not at issue there, Robinson on several occasions speaks of the miner first having to prove under subsection(c) that he has a "totally disabling respiratory" impairment. Other courts have used similar language in describing subsection(c). E.g., Compton v. Inland Steel Coal Co., 933 F.2d 477, 480 (7th Cir.1991).
 
 
 18
 To be sure, subsections(1)-(3) of Sec. 718.204(c) equate "total disability" with showings of a certain level or type of ventilatory or pulmonary impairment. On the other hand, subsection (4) permits a finding of total disability "if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in [coal mining or comparable work]." (emphasis added). Precisely the same language is used in Sec. 718.204(b) to explain when total disability is "due to" pneumoconiosis: "if pneumoconiosis ... prevents or prevented the miner [from engaging in coal mining or comparable work]." Yet the BRB has held that "prevents" in (c)(4) means prevents in and of itself, while "prevents" in (b)means causally contributes. Compare Beatty v. Danri Corp., 16 BLR 1-11 (BRB 1991), with Scott, 14 BLR 1-37 (BRB 1990).
 
 
 19
 The interplay of these rules invites incongruous results. Posit two miners, both "totally disabled" in its ordinary sense and suffering the same degree of pneumoconiosis and the same degree of whole-man impairment from it. The three-pack-a-day smoker may receive benefits because his lungs are wrecked, but his colleague with severe arthritis is out of luck.
 
 
 20
 Further incongruity can be found in an analogy to survivors' claims for benefits under the Act. These benefits are payable only if the miner's death was "due to" pneumoconiosis,Sec. 718.205(a), but here the magic words "due to" have been interpreted by the Director--and all circuits that have addressed the issue--to mean simply that pneumoconiosis has "hastened death in any way." Brown v. Rock Creek Mining Co., 996 F.2d 812, 816 (6th Cir.1993); Peabody Coal Co. v. Director, OWCP, 972 F.2d 178, 183 (7th Cir.1992); Shuff v. Cedar Coal Co., 967 F.2d 977 (4th Cir.1992), cert. denied, 113 S.Ct. 969 (1993); Lukosevicz v. Director, OWCP, 888 F.2d 1001, 1005-1006 (3rd Cir.1989). A death can therefore be "due to" pneumoconiosis even though the disease could not have caused death by itself. Even more importantly for our analogy, a death can be "due to" pneumoconiosis though pulmonary or respiratory dysfunction is not a primary or sufficient cause of it. E.g., Brown (primary cause of death was ventricular fibrillation); Shuff (pancreatic cancer); Lukosevicz (pancreatic cancer).
 
 
 21
 In any event, incongruity and paradox are frequent visitors in the various sets of black lung regulations,[4] and there may be some method to this madness that is not apparent to us without full briefing and argument on this point. We identify the issue only because it could become relevant on remand.
 
 C.
 
 22
 Under Walker v. Director, OWCP, 927 F.2d 181 (4th Cir.1991), a physician's opinion that a claimant can do his usual coal mine job cannot be credited unless the record shows that the physician understood the exertional requirements of that job. See also Eagle v. Armco, Inc., 943 F.2d 509 (4th Cir.1991). Miller argues that Dr. Zaldivar's report does not meet the Walker standard. The doctor's report states:
 
 
 23
 Since 1972 [Miller] has been a section foreman. He was a section foreman until three years prior to quitting when he was a mine foreman. He states that for the last two years of work, although his occupation was labeled as mine foreman, he took care of a transport belt that transported coal through a mountain. He had a seven man crew under him. He says that he had to crawl to inspect the belt and had to walk. If the belt broke and they needed help he helped repair it. Before then he was a section foreman and had less physical activities. Occasionally he pitched [in] to help one of the workers. The mine was larger and he didn't have to do any of the work himself. He was transferred to the other job as mentioned. Before then he was a general laborer. He had operated a coal drill, shuttle car and roof bolter.
 
 
 24
 We would stretch reason to expect much more detail than that from a physician. It is certainly much more detail than is in any of the reports--about which he offers no complaint--relied on by the claimant.
 
 D.
 
 25
 Finally, Miller argues that the ALJ should not have given weight to the opinions of physicians who erroneously found that he did not have pneumoconiosis at all.[5] Our recent opinion in Grigg v. DOWCP, --- F.3d ----, No.92-1591 (4th Cir. July 1, 1994), addresses this issue in a different context. In Grigg, we joined those circuits that have held that little weight should generally be given opinions as to disability that are based on the erroneous premise that the claimant does not have pneumoconiosis.[6] We trust that Grigg will be taken into account on remand.
 
 
 26
 The claim is remanded for reconsideration.
 
 REMANDED
 
 
 [1]
 The manner in which the ALJ reached this finding warrants some comment. An ALJ may rely on the chronological sequence of medical evidence that shows a progression of the disease (and hence no inconsistency in the evidence) or to give credit to a later opinion based on more complete evidence. Thorn v. Itmann Coal Co., 3 F.3d 713, 718 (4th Cir.1993). We interpret the result of the ALJ's analysis here to be a proper "progression" finding, but we emphasize that we are wary of unexplained appeals to "recency."
 There is also a certain fuzziness in the ALJ's "resolving all doubts" in favor of the miner to find by a preponderance that the existence of pneumoconiosis was proved by the x-rays. The respondent employer asserts that the ALJ applied the now-discredited "true doubt" rule, see Director, OWCP v. Greenwich Collieries, 114 S.Ct. 2251 (1994), but the "true doubt" rule, by definition, applied only where no finding by a preponderance could be made.
 
 
 [2]
 Three examining physicians (Drs. Tampaya, Pfister, and Leef) diagnosed occupational pneumoconiosis with mild to moderate impairment, but none of them offered an opinion as to total disability. Dr. Rasmussen offered a consultative report in which he opined that Miller is totally disabled due to pneumoconiosis. The ALJ rejected Dr. Rasmussen's opinion because he did not examine Miller and he failed to address the objective medical evidence with specificity
 
 
 [3]
 In Scott, the BRB overruled Wilburn v. Director, OWCP, 11 BLR 1-135 (BRB 1987), in which it had held that a miner had to prove that his pneumoconiosis is disabling "in and of itself" in order to satisfy the
 "due to" prong of the eligibility test. Scott was essentially the BRB's acquiescence in the uniform disapproval of Wilburn by the courts of appeals. See Lollar v. Alabama By-Products Corp., 893 F.2d 1258 (11th Cir.1990); Adams v. Director, OWCP, 886 F.2d 818 (6th Cir.1989); Bonessa v. United States Steel Corp., 884 F.2d 726 (3rd Cir.1989); Mangus v. Director, OWCP, 882 F.2d 1527 (10th Cir.1989). This circuit's decision in Robinson followed Scott by about three months.
 
 
 [4]
 For example, "pneumoconiosis" is defined as a large array of chronic respiratory and pulmonary ailments "arising out of coal mine employment." 20 C.F.R. Sec. 718.201. Nonetheless, having proved that he suffers from "pneumoconiosis," a claimant is required by the regulations to prove once again that the disease "arose at least in part out of coal mine employment." Sec. 718.203(a)
 
 
 [5]
 As we emphasized in Robinson, 914 F.2d at 39, "pneumoconiosis" is a legal term (as defined at 20 C.F.R. Sec. 718.201), and whether a claimant has "pneumoconiosis" is ultimately a question for the ALJ, who must bear in mind that physicians may use the term "pneumoconiosis" in a much more narrow sense than the law prescribes
 
 
 [6]
 The actual holding in Grigg is that such an opinion is not sufficient to satisfy the rigorous standard for Sec. 727.203(b)(3) rebuttal of the interim presumption under Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir.1984). We declined to decree an arbitrary amount of weight to be given such opinions in any and all contexts, and we again decline to do so