RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ISLAND CREEK COAL COMPANY,

*Petitioner*,

*v.*

No. 18-3147

JAY H. WILKERSON; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

*Respondents*.

───────────────

Upon Petition for Review from the Benefits Review Board;
No. 16-0331 BLA.

Decided and Filed:  December 3, 2018

Before:  BATCHELDER, SUTTON, and WHITE, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  William S. Mattingly, JACKSON KELLY, PLLC, Lexington, Kentucky, for
Petitioner.  Brent Yonts, YONTS, SHERMAN & DRISKILL, PSC, Greenville, Kentucky, for
Respondent Wilkerson.  Daniel Aguilar, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., Gary K. Stearman, Jeffrey S. Goldberg, UNITED STATES DEPARTMENT
OF LABOR, Washington, D.C., for Federal Respondent.

───────────────

## OPINION

───────────────

SUTTON, Circuit Judge.  The Benefits Review Board awarded benefits to Jay Wilkerson
under the Black Lung Benefits Act.  The Island Creek Coal Company asks us to vacate that
award on two grounds:  The administrative law judge lacked authority to hear the case under the
Appointments Clause, and the evidence does not support the award.  Because Island Creek

forfeited its constitutional claim by failing to raise it in its opening brief and because substantial evidence supports the award, we deny the petition for review.

I.

Jay Wilkerson mined coal for over 25 years. In 1994, he retired from the Island Creek Coal Company's operation at the Crescent mine, where he had worked most recently as an electrician. The job required strenuous activity. He often lifted pieces of equipment that weighed as much as 70 pounds, and his tools alone weighed 15 pounds. Throughout his quarter-century career, his work frequently exposed him to coal dust, a reality that generated several health problems.

In 2012, Wilkerson filed an application for benefits under the Black Lung Benefits Act. The Act provides compensation to miners disabled by pneumoconiosis, "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. §§ 902(b), 922(a)(1). Administrative Law Judge Timothy McGrath handled the hearing, at which Wilkerson and Island Creek presented conflicting medical evidence. Judge McGrath granted Wilkerson's application, and the Benefits Review Board affirmed.

The company filed a petition for review.

II.

Island Creek forfeited its Appointments Clause challenge. U.S. Const. art. II, § 2, cl. 2. Appellants must raise any challenge to a district court or administrative decision in their opening brief. *Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008). The company did not do that. In its opening brief, it identified one issue for the court to consider at the outset: Whether the administrative law judge "rationally explained how the conflicting evidence presented carried the burden to establish total disability?" Pet. Br. 3. And in the rest of that brief, it said nothing about the authority of administrative law judges in this area. Only in its reply brief did it raise the Appointments Clause issue. That was one brief too late. Time, time, and time again, we have reminded litigants that we will treat an "argument" as "forfeited when it was not raised in

the opening brief." *Golden*, 548 F.3d at 493; *see Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989).

Appointments Clause challenges, true enough, arise under the U.S. Constitution, making them special in one sense. But that does not make them special in this sense. We are not alone in refusing to consider constitutional challenges when the appellant failed to raise them in the opening brief. *See, e.g.*, *Am. Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 478 (6th Cir. 2004); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 755 (D.C. Cir. 2009). The obligation to identify the issues on appeal in the opening brief applies to arguments premised on the loftiest charter of government as well as the most down to earth ordinance.

None of the explanations for excusing a forfeiture applies. This challenge does not affect our jurisdiction. As we recently explained, Appointments Clause challenges are "not jurisdictional and thus are subject to ordinary principles of waiver and forfeiture." *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 678 (6th Cir. 2018).

Nor has Island Creek identified any "exceptional circumstances" for looking the other way. *Freytag v. Comm'r*, 501 U.S. 868, 894 (1991) (Scalia, J., concurring in part and concurring in the judgment); *see also id.* at 879 (majority opinion) (holding that the Supreme Court may excuse forfeiture in "rare cases"). That we entertained an Appointments Clause challenge in *Jones Brothers* does not help Island Creek. In that case, we dealt with the subsidiary question whether the claimant must preserve his argument in the administrative process. Today's barrier is that Island Creek did not raise the claim in its opening brief *here*. No such problem infected the *Jones Brothers* case.

It makes no difference that Island Creek submitted a stipulation to the administrative law judge that it might contest, "for appellate purposes, a challenge to the constitutionality of the Act and regulations, as applied." Joint Pre-Trial Stipulations. The salient reality is that the company did not raise the issue when it mattered most: in its opening brief in the Sixth Circuit. A forfeiture in our court does not become forgivable based on potential preservations of the issue in the administrative process.

(We need not decide whether the company's stipulation preserved its Appointments Clause challenge before the agency. The vagueness of the statement casts doubt on that possibility under *Jones Brothers*. *See* 898 F.3d at 678 (noting that the petitioner identified a specific Appointments Clause challenge before the agency); *cf.* Frank H. Easterbrook, *Presidential Review*, 40 Case W. Res. L. Rev. 905 (1989) (exploring the Executive Branch's responsibility to interpret and comply with the Constitution). But we need not resolve the point today.)

Island Creek also cannot hold the line on the ground that its Appointments Clause challenge lacked merit until the Supreme Court decided *Lucia v. Securities & Exchange Commission*. 138 S. Ct. 2044 (2018). No precedent prevented the company from bringing the constitutional claim before then. *Lucia* itself noted that existing case law "says everything necessary to decide this case." *Id.* at 2053. The Tenth Circuit, before *Lucia*, held that administrative law judges were inferior officers. *Bandimere v. SEC*, 844 F.3d 1168, 1188 (10th Cir. 2016). And many other litigants pressed the issue before *Lucia*. *See, e.g.*, *Tilton v. SEC*, 824 F.3d 276, 281 (2d Cir. 2016); *Bennett v. SEC*, 844 F.3d 174, 177–78 (4th Cir. 2016); *Burgess v. FDIC*, 871 F.3d 297, 299 (5th Cir. 2017); *Jones Bros.*, 898 F.3d at 672. That the Supreme Court once denied certiorari in a similar Appointments Clause case adds nothing because such decisions carry no precedential value. *See Teague v. Lane*, 489 U.S. 288, 296 (1989). All in all, Island Creek forfeited this Appointments Clause challenge, and we see no reasoned basis for forgiving the forfeiture.

III.

That brings us to the merits. To qualify for benefits under the Black Lung Benefits Act, a miner must establish four facts. Fact one: The miner has pneumoconiosis. Fact two: The disease arose "out of coal mine employment." Fact three: The miner is "totally disabled." Fact four: The "pneumoconiosis contributes to the total disability." 20 C.F.R. § 725.202(d)(2).

Administrative regulations and case law guide the process further. If the claimant lacks sufficient evidence of pneumoconiosis, the administrative law judge may presume he suffers from the disease if he worked for 15 years at a qualifying coaling mine and suffers "a totally

disabling respiratory or pulmonary impairment." *Id.* § 718.305; *see* 30 U.S.C. § 921(c)(4); *Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 662 (6th Cir. 2015). A miner has a totally disabling impairment if he cannot perform his "usual coal mine work" and cannot engage in gainful employment "requiring the skills or abilities comparable to those of any employment in a mine" where he previously worked. 20 C.F.R. § 718.204(b)(1). Once a miner establishes a presumptive entitlement to benefits, the employer may rebut the presumption by showing that the miner does not have pneumoconiosis or that his impairment did not arise out of employment at a coal mine. *See* 30 U.S.C. § 921(c)(4).

The Benefits Review Board examines the administrative law judge's factual findings for substantial evidence. Although we examine the Board's decision with fresh eyes, that requires us to ensure only that the administrative law judge relied on substantial evidence. *See Greene v. King James Coal Min., Inc.*, 575 F.3d 628, 633 (6th Cir. 2009).

Judge McGrath's reasoned, 40-page opinion passes this test. Wilkerson worked for more than 15 years at a qualifying mine, and substantial evidence showed that he suffered total disability due to a respiratory or pulmonary impairment. All of Wilkerson's pulmonary function tests produced qualifying values and suggested that he was disabled, while none of the arterial blood gas studies produced qualifying results. Faced with the conflicting medical evidence, Judge McGrath turned to the four doctors who testified: Drs. Chavda, Baker, Selby, and Tuteur. *See* 20 C.F.R. § 718.204(b)(2)(iv). He credited testimony from Dr. Chavda, discounted the three others for legitimate reasons, and concluded that Wilkerson suffered from a disability. Then he reasonably concluded that Island Creek could not rebut the presumption that Wilkerson suffered from coal-mine-induced pneumoconiosis.

Island Creek trains its challenge to these conclusions on "the finding of total disability." Pet. Br. 9. But each ground does not close the deal.

Island Creek claims that Judge McGrath could not rely on Dr. Chavda's testimony because, at the time of his deposition, Dr. Chavda had a result only from a 2012 pulmonary function test. In a 2014 test conducted by Dr. Tuteur, which Dr. Chavda knew nothing about, Wilkerson produced qualifying results before—but not after—taking a bronchodilator, a

medicine that helps with breathing. As Judge McGrath fairly observed, however, the post-bronchodilator tests do not definitively resolve the question of disability, meaning that a contrary post-bronchodilator value would not automatically disprove Dr. Chavda. The judge also noted that three additional post-bronchodilator test results—two of which Dr. Chavda performed—produced qualifying results, confirming Dr. Chavda's earlier judgment. This reasonably explains why Judge McGrath determined that Dr. Chavda's assessment still carried weight. Because Judge McGrath found the other doctors' testimony to be unreliable, he followed the most credible medical testimony before him. Under substantial evidence review, he had no obligation to do anything more. *See Greene*, 575 F.3d at 633.

Island Creek submits that Judge McGrath applied inconsistent standards because he discredited doctors for not incorporating the most recent test results but did not do the same for Dr. Chavda. But Dr. Chavda's conclusion about Wilkerson's disability tracked the newest available data, namely the most recent pulmonary function tests. Plus, Judge McGrath did not discount Dr. Tuteur for failing to incorporate test results that Dr. Tuteur didn't have. He concluded that Dr. Tuteur failed to adequately explain why his own diagnosis of a "moderate obstructive pulmonary impairment alone does not prevent [Wilkerson] from performing his usual [job], including lifting 60-70 pounds daily." Pet. App. 254.

Island Creek faults Dr. Chavda for not relying on additional lung volume studies, another type of test that Dr. Tuteur and Dr. Selby performed. According to the company, Judge McGrath erred in not explaining why Dr. Chavda's "failure to rely on lung volume testing" did not fatally undermine Dr. Chavda's medical analysis. Pet. Br. 33. But, in fact, Judge McGrath explained why he could not rely on Dr. Tuteur and Dr. Selby, their lung volume studies notwithstanding, and he explained why he trusted Dr. Chavda. Because nothing required Dr. Chavda to do a lung volume test, Judge McGrath did not mention its absence. Faulting an administrative law judge for every silence would take us perilously close to allowing courts to reweigh the medical evidence on appeal, something we may not do. *See Greene*, 575 F.3d at 633.

Island Creek believes that Dr. Baker's report contradicted Dr. Chavda. True or not, the point doesn't matter. The test results that Dr. Baker relied on in his report were not in the

administrative record and, as a result, Judge McGrath chose not to credit Dr. Baker's analysis, a ruling the company doesn't contest.

Island Creek protests Judge McGrath's reasons for discounting Dr. Tuteur and Dr. Selby. But Dr. Tuteur's testimony suffered from inconsistencies, such as not explaining why a "moderate obstructive pulmonary impairment" would not prevent Wilkerson from lifting 70 pounds. Pet. App. 254. It was for Judge McGrath, not us, to decide whether those inconsistencies undermined his medical analysis. *See Greene*, 575 F.3d at 633.

As for Dr. Selby, he didn't "know what the federal guidelines are," believed that an arterial blood gas study trumped pulmonary function tests, and didn't know about the requirements of the claimant's prior job. Pet. App. 140. Judge McGrath reasonably thought these admissions raised red flags and cited case law and Dr. Chavda's testimony about the relevance of pulmonary function tests as support. *See Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1040–41 (6th Cir. 1993), *abrogated on other grounds by Eastover Min. Co. v. Williams*, 338 F.3d 501 (6th Cir. 2003); *cf. Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 491 (6th Cir. 2014). We have no sound basis for rejecting these reasoned judgments. *See Greene*, 575 F.3d at 633.

For these reasons, we deny the petition for review.