RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0020p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ISLAND CREEK COAL COMPANY,

　　　　　　　　　　　　　　　*Petitioner*,

　　*v.*

LARRY ALLEN YOUNG; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

　　　　　　　　　　　　　　　*Respondents*.

> No. 19-3113

───────────────

On Petition for Review from an Order of the Benefits Review Board,
United States Department of Labor;
No. 18-0064 BLA.

Argued:  November 21, 2019

Decided and Filed:  January 21, 2020

Before:  SUTTON, NALBANDIAN, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Jeffrey R. Soukup, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.
Brent Yonts, YONTS, SHERMAN & DRISKILL, PSC, Greenville, Kentucky, for Respondent
Young.  Cynthia Liao, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for
Federal Respondent.  **ON BRIEF:**  Jeffrey R. Soukup, William S. Mattingly, JACKSON
KELLY PLLC, Lexington, Kentucky, for Petitioner.  Brent Yonts, YONTS, SHERMAN
& DRISKILL, PSC, Greenville, Kentucky, for Respondent Young.  Gary K. Stearman, Rita A.
Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal
Respondent.

_____

**OPINION**

_____

CHAD A. READLER, Circuit Judge.  For roughly two decades, Larry Young worked in coal mines, his final years in the employ of Island Creek Coal Company.  Following his retirement from mining, Young filed for benefits under the Black Lung Benefits Act.  The Act presumes that a miner with a lung impairment who, like Young, worked for more than fifteen years in an underground coal mine, has pneumoconiosis, more commonly known as black lung disease, and, in addition, that pneumoconiosis caused the miner's total disability.  Finding that this collective presumption was not overcome by Island Creek, an Administrative Law Judge (or "ALJ") granted Young benefits under the Act, and the Benefits Review Board affirmed the award.  Because those proceedings were conducted under the proper standards of review and substantial evidence supports the decision below, we **DENY** Island Creek's petition for review.

**I.  BACKGROUND**

Larry Young was diagnosed with emphysema in 2002.  What gave root to Young's lung disease was deeply disputed by the parties in the administrative proceedings below.

One possible cause or contributing factor was exposure to coal dust.  Young worked in coal mines for over nineteen years, retiring from Island Creek Coal Company in 1999.  Over his career, Young's work regularly exposed him to coal dust.  The dust was so pervasive that, at times, it would limit Young's vision to a few feet.  And both during and after work, Young would often cough up coal dust.

Another possible cause or contributing factor was cigarette smoking.  Young was a habitual smoker.  For over thirty-five years, he smoked at least a pack of cigarettes a day, sometimes more.

Believing that coal dust was at least a contributing factor to his lung disease, Young filed an application for benefits under the Act.  That federal regulatory scheme provides compensation to miners disabled by pneumoconiosis, "a chronic dust disease of the lung and its sequelae,

including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). Because Young had worked for at least fifteen years as a coal miner and was totally disabled by his lung impairment, he enjoyed a statutory presumption that his disability was due to pneumoconiosis. *See* 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b)(1), (c)(1).

If Young was entitled to benefits under the Act, Island Creek, Young's last coal-mine employer, would be obligated to provide them. Island Creek contested Young's claim and requested a hearing. After reviewing several medical reports, the ALJ presiding at the hearing concluded that Island Creek did not rebut the statutory presumption and accordingly awarded benefits to Young. The Benefits Review Board affirmed that award. In so doing, the Board noted that if there was any error in the ALJ's recitation of the standard, that error was harmless. Island Creek then filed a petition for review in this Court.

## II.  ANALYSIS

### A.        Island Creek Forfeited Its Appointments Clause Argument.

Island Creek starts with a potentially dispositive threshold challenge. Citing the United States Supreme Court's recent decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Island Creek contends the appointment of the ALJ who awarded Young benefits violated the Appointments Clause. In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission are officers of the United States. *Id.* at 2055. As such, the Supreme Court explained, those ALJs must be appointed in a manner consistent with the Appointments Clause of the U.S. Constitution, Art. II, § 2, cl. 2, which specifies that the appointment of an inferior officer must be made by the President, a court of law, or the head of a department. 138 S. Ct. at 2051, 2055.

ALJs of the Department of Labor, including the ALJ who decided Young's case, had been appointed by Department staff members, rather than the Department head, the Secretary of Labor. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 744 (6th Cir. 2019). Noting the tension between that practice and the holding in *Lucia*, Island Creek raised the issue with the Board. Although the Secretary of Labor later ratified the appointments of ALJs in the Department, this was too little, too late, said Island Creek, as it occurred after Young had been

awarded benefits. In view of this purported constitutional flaw in the proceedings below, Island Creek says this matter should be remanded for a new hearing before a properly appointed ALJ.

Island Creek may have a point, but it is a point the company raised too late in the day. Island Creek first presented the issue to the Benefits Review Board in a motion for supplemental briefing filed four months after the merits briefing period had closed. But by Board rule, Island Creek was required to raise the issue in a timelier fashion. Like many tribunals, the Board requires that substantive challenges to an ALJ's determination be raised in a party's opening brief filed with the Board. 20 C.F.R. § 802.211(a) (requiring petitions for review to contain "the specific issues to be considered" by the Board). Island Creek's failure to do so here dooms its Appointments Clause challenge. In so holding, we are guided by our recent decision in *Bryan*. There, we held that the petitioners (including, as here, Island Creek) had forfeited their Appointments Clause challenge by failing to raise it pursuant to the Board's own issue-exhaustion requirements. 937 F.3d at 754. In *Bryan*, the Appointments Clause argument was raised for the first time in a motion for reconsideration before the Board. Island Creek took largely the same tack here, raising the Appointments Clause argument for the first time well after the close of briefing.

*Bryan* thus dictates today's outcome. To its credit, Island Creek ultimately concedes that this case and *Bryan* present "identical procedural scenarios," meaning that the company's challenge is forfeited. (Reply Br. at 1.) Accordingly, we deny Island Creek's request for remand on the basis of its Appointments Clause challenge.

**B.        The ALJ's Findings Were Supported By Substantial Evidence.**

Turning to the merits of the petition for review, Island Creek challenges the basis for the Board's award of black lung benefits to Young. With "fresh eyes," we examine the Board's legal conclusions de novo. *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018) (citing *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 633 (6th Cir. 2009)). With respect to those conclusions, we ask whether the Board properly applied the statutory "substantial evidence" test to the ALJ's findings of fact. *Bryan*, 937 F.3d at 754–55 (citing *Wilkerson*, 910 F.3d at 257; 33 U.S.C. § 921(b)(3)). In this setting, "substantial evidence means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 755 (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (per curiam) (internal quotation marks omitted)).

To be eligible for benefits under the Act, a miner must establish four facts:

(1) that the miner has pneumoconiosis;
(2) that the miner's disease arose "out of coal mine employment;"
(3) that the miner is "totally disabled;" and
(4) that the miner's "pneumoconiosis contributes to the total disability."

*Wilkerson*, 910 F.3d at 257 (citing 20 C.F.R. § 725.202(d)(2)). One critical benchmark for establishing eligibility under the Act is whether the miner was employed in underground or substantially similar coal mining for at least fifteen years. If so, and if the miner has evidence of a totally disabling respiratory or pulmonary impairment, it is presumed that pneumoconiosis caused the miner's total disability. 20 C.F.R. § 718.305(b)(1), (c)(1). Once a miner establishes this presumptive entitlement to benefits, the mine operator may put forth evidence to rebut that presumption. *See* 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(d).

It is this latter issue that divides the parties. As a threshold matter, the parties agree that Young is entitled to the rebuttable presumption of pneumoconiosis. He worked as a coal miner for over fifteen years, and both pulmonary-function studies as well as medical-opinion evidence supported the ALJ's finding that Young is totally disabled. But the sides part ways over the ALJ's determination that Island Creek did not rebut that presumption. Island Creek says that conclusion was flawed in two respects. One, that the ALJ applied the wrong standard for rebuttal. And two, that the ALJ improperly discounted medical-opinion evidence from Drs. Selby, Tuteur, and Culbertson. We address each argument in turn.

*The "In Part" Standard Recognized In* Arch On The Green *Applies In Assessing Whether Island Creek Rebutted The Presumption Of Legal Pneumoconiosis.*

1. To rebut the presumption that Young is totally disabled due to pneumoconiosis, Island Creek sought to show that Young had neither clinical nor legal pneumoconiosis, one of two ways to overcome the presumption (the other is by showing that, if Young has clinical or legal

pneumoconiosis, it nonetheless did not cause any part of Young's disability). 20 C.F.R. § 718.305(d)(1)(i)–(ii); 30 U.S.C. § 921(c)(4); *see Bryan*, 937 F.3d at 757–58. The ALJ found that, while Island Creek sufficiently demonstrated that Young did not have clinical pneumoconiosis, Young did have legal pneumoconiosis. Island Creek disputes the latter finding.

Regulations issued by the Department define legal pneumoconiosis as any lasting lung impairment that is "significantly related to, or substantially aggravated by" exposure to coal dust. 20 C.F.R. § 718.201(b). The ALJ's opinion acknowledged this standard—that Island Creek needed to show that Young's lung impairment was not "significantly related to, or substantially aggravated by" coal dust exposure. But that is not the test the ALJ ultimately utilized, notes Island Creek. Rather, the ALJ concluded that Young suffered from legal pneumoconiosis because his respiratory disease was due "at least *in part* to his history of coal mine dust exposure."

As support for employing the "in part" standard (rather than the arguably more stringent "significantly related to" standard), the ALJ cited our decision in *Arch on the Green v. Groves*, 761 F.3d 594 (6th Cir. 2014). Much of the dispute here, then, turns on the proper understanding of *Arch on the Green*. At issue there was the appropriate test to apply in assessing whether a miner has legal pneumoconiosis for purposes of seeking benefits under 20 C.F.R. § 725.202(d)(2), a companion provision to § 718.305(d), the provision under which Young claims entitlement to benefits. As already explained, and as recognized in *Arch on the Green*, § 718.201 of the implementing regulations of the Act defines legal pneumoconiosis as a lasting lung impairment that is "significantly related to, or substantially aggravated by" exposure to coal dust. *See* 761 F.3d at 597–98. But *Arch on the Green* recognized that another regulation, 20 C.F.R. § 718.203(a), articulated a second standard related to establishing legal pneumoconiosis for purposes of eligibility under the Act. Under the § 718.203(a) standard, a miner is deemed to be suffering from legal pneumoconiosis where his "pneumoconiosis arose *at least in part* out of coal mine employment." *Id.* at 598 (emphasis added). Harmonizing these competing standards, we held that a miner is deemed to have a lung impairment that is "significantly related to" exposure to coal dust, thereby satisfying the requirements for legal

pneumoconiosis, "by showing that his disease was caused 'in part' by coal mine employment." *Id.* at 598–99.

In *Arch on the Green*, it bears noting, we were not writing on a clean slate. Rather, we acknowledged there that both this Circuit and our sister circuits had used the two standards ("in part" and "significantly related to") "interchangeably" when assessing whether a miner has legal pneumoconiosis. *Id.* at 598 (citing *Harman Mining Co. v. Dir., Office of Workers' Comp. Programs*, 678 F.3d 305, 309 (4th Cir. 2012); *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000); *Freeman United Coal Mining Co. v. Office of Workers' Comp. Programs*, 957 F.2d 302, 303 (7th Cir. 1992); *Lollar v. Ala. By-Prods. Corp.*, 893 F.2d 1258, 1264–65 n.9 (11th Cir. 1990)). *Arch on the Green* followed that lead, holding that satisfying the "in part" standard is sufficient to establish that a miner suffers from legal pneumoconiosis for purposes of the Act. *Id.* at 598–99. And we have followed *Arch on the Green*'s lead from there. *See, e.g.*, *Island Creek Coal Co. v. Marcum*, 657 F. App'x 370, 377 (6th Cir. 2016) (explaining that "significantly related to" and "in part" are interchangeable standards for assessing whether a miner has legal pneumoconiosis); *Robert Coal Co. v. Dir., Office of Workers' Comp. Programs*, 753 F. App'x 350, 356 (6th Cir. 2018) (applying the "in part" standard when determining the existence of legal pneumoconiosis).

Island Creek is correct to note that, unlike Young, the miner in *Arch on the Green* did not benefit from the fifteen-years-of-underground-mining-inspired rebuttable presumption set out in § 718.305. But whether that presumption is invoked does not alter our definition of legal pneumoconiosis. It merely changes who bears the burden to prove (or disprove) whether the miner suffers from the disease. Here, where the rebuttable presumption applied, Island Creek was required to disprove the existence of legal pneumoconiosis by showing that Young's coal mine employment did not contribute, in part, to his alleged pneumoconiosis.

2. While the circuits are largely aligned on how to harmonize the respective definitions of pneumoconiosis in § 718.201 and § 718.203, those efforts have not been without challenge, given the text of those regulations. Indeed, two circuits have described that harmonization process as akin to reconciling an incongruous "paradox." *See Lollar*, 893 F.2d at 1263 n.8 (noting a paradox between § 718.201's and § 718.203's requirements for proving

pneumoconiosis "ar[o]se out of coal mine employment"); *Miller v. Dir., Office of Workers' Comp. Programs*, 35 F.3d 556 (table), 1994 WL 478058, at *4 & n.4 (4th Cir. 1994) (per curiam) (citing § 718.201 and § 718.203 when emphasizing that "incongruity and paradox are frequent visitors in the various sets of black lung regulations, and there may be some method to this madness that is not apparent to us").

Another paradox of sorts is found in the standard we apply to an employer attempting to invoke § 718.305(d)(1)(i) to overcome the rebuttable presumption. To do so, the employer (like Island Creek here) must disprove the existence of both clinical and legal pneumoconiosis. *See* 20 C.F.R. § 718.305(d)(1)(i)(A) & (B). In each instance, the employer must confront the "in part" standard when seeking to disprove the relevant form of pneumoconiosis. *See Arch on the Green*, 761 F.3d at 597. Utilizing the same standard makes sense to the extent that both clinical and legal pneumoconiosis are defined in the regulation by reference to § 718.201. But as a pure textual matter, the "in part" standard is included only in § 718.203, not § 718.201. And only the provision concerning clinical pneumoconiosis makes reference to § 718.203 by including the clause: "arising out of coal mine employment (see § 718.203)." 20 C.F.R. § 718.305(d)(1)(i)(B). In other words, in the rebuttable presumption setting of § 718.305(d)(1)(i), only the definition of clinical pneumoconiosis references § 718.203. And as that provision is separated from the definition of legal pneumoconiosis with a semicolon, a fair reading of the regulation might suggest that, when applying the rebuttable-presumption standard, we should look to § 718.203(a)'s "in part" standard only when defining clinical pneumoconiosis, not legal pneumoconiosis. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 162, 164 (2012) (noting that "semicolons insulate words from grammatical implications that would otherwise be created by the words that precede or follow them[]").

According to Island Creek, practical considerations also support this reading of the regulation. Consider, says Island Creek, the unique features of legal and clinical pneumoconiosis, respectively. Legal pneumoconiosis is the product of statutory and regulatory design and is tied as much to general workplace conditions as it is to a specific medical diagnosis. Clinical pneumoconiosis, on the other hand, is a specific disease, with specific distinguishing features, recognized in the medical community. That specificity can make it more

difficult to prove than legal pneumoconiosis, in many instances. It follows, says Island Creek, that the presumption in favor of clinical pneumoconiosis should thus be more difficult to disprove. *Cf. Anderson v. Dir., Office of Workers' Comp. Programs*, 455 F.3d 1102, 1105 (10th Cir. 2006) (holding that § 718.203(b), a companion section to § 718.203(a), applies only to clinical, not legal, pneumoconiosis).

As already explained, our precedent forecloses a disparate reading of the standards for disproving clinical and legal pneumoconiosis. Any other conclusion, moreover, would seem to be at odds with the long-established understanding of the term "pneumoconiosis" in § 718.203. We have consistently held that the term there, standing alone, refers to both legal and clinical pneumoconiosis. *See Robert Coal Co. v. Dir., Office of Workers' Comp. Programs*, 753 F. App'x 350, 356–57 (6th Cir. 2018) (finding that § 718.203(b) applies to legal pneumoconiosis); *Island Creek Coal Co. v. Calloway*, 460 F. App'x 504, 509–10 (6th Cir. 2012) (same); *see also Consolidation Coal Co. v. Dir., Office of Workers' Comp. Programs*, 864 F.3d 1142, 1147 (10th Cir. 2017) (noting that the Act's definition of pneumoconiosis includes both clinical and legal pneumoconiosis); *Sunny Ridge Min. Co. v. Keathley*, 773 F.3d 734, 739 (6th Cir. 2014) (same); *Barber v. Dir., Office of Workers' Comp. Programs*, 43 F.3d 899, 901 (4th Cir. 1995) ("If there is any lingering confusion on this point, let us dispel it now. The legal definition of 'pneumoconiosis' is incorporated into every instance the word is used in the statute and regulations."). Given this consistent reading of the term "pneumoconiosis" in § 718.203, it would be peculiar, for purposes of § 718.305(d)(1)(i), to now read § 718.203 as applicable to clinical pneumoconiosis only.

Consider further the Act's broader statutory scheme. *See, e.g.*, *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) ("Interpretation of a phrase [of a statute] of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning. We thus look to the provisions of the whole law to determine . . . meaning." (internal citations and quotations omitted)). Compare the miner in Young's circumstance with a miner who has not met the presumption in favor of a benefits award. *Compare* 20 C.F.R. § 718.305, *with* 20 C.F.R. § 725.202(d)(2). The miner in the latter circumstance enjoys no presumption of disability and thus must prove his legal pneumoconiosis.

But in attempting to do so, the miner enjoys the benefit of the "in part" standard set out in § 718.203. *See Arch on the Green*, 761 F.3d at 598–99. It would be odd then to deny that same favorable standard to a miner like Young, who *enjoys a presumption in favor of eligibility for benefits*.

For today's purposes, it is enough to say that *Arch on the Green* controls the outcome. The ALJ thus did not err by applying an "in part" standard in determining whether Island Creek rebutted the presumption that Young has legal pneumoconiosis.

### *To Rebut The "In Part" Standard, An Employer Must Show That Coal-Mine Exposure Had No More Than A* De Minimis *Impact On A Miner's Lung Impairment.*

An employer rebuts the presumption of legal pneumoconiosis by showing that a miner's coal-mine employment did not contribute, even in part, to his pneumoconiosis. But what does this "in part" standard require of the employer?

Here too, *Arch on the Green* is instructive. Albeit in resolving an issue different than the one before us today, in *Arch on the Green* we defined "in part" to mean "more than a *de minimis* contribution" and instead "a contributing cause of some discernible consequence." 761 F.3d at 599–601 (citing *Calloway*, 460 F. App'x. at 512–13); *see also Marcum*, 657 F. App'x at 377 n.3. Utilizing that same standard today, it follows that Island Creek may rebut the presumption of legal pneumoconiosis by showing that coal-mine exposure had at most only a *de minimis* effect on Young's lung impairment. *See Arch on the Green*, 761 F.3d at 600.

Island Creek worries that application of the "in part" standard in the rebuttable presumption context could be read to impose a "rule out" standard on coal-mine employers seeking to rebut that presumption. By way of background, § 718.305(d)(1)(ii) articulates an alternative basis for an employer to rebut the presumption in favor of pneumoconiosis. To do so, the employer must "rule out" that (in other words, show that "no part" of) a miner's disability was caused by pneumoconiosis. 20 C.F.R. § 718.305(d)(1)(ii). That "no part" standard, Island Creek observes, is not all that unlike the not "in part" standard extrapolated from § 718.203(a). And equating the not "in part" standard utilized in § 718.305(d)(1)(i) with the "rule out" standard would force an employer to "rule out" that mining contributed to a miner's legal or clinical

pneumoconiosis. Which is no easy task, in the Department's view. After all, as the Department explains here, under the "rule out" standard, "even a de minimis [sic] or insignificant contribution from pneumoconiosis prevents rebuttal."

Island Creek can rest assured, for neither we nor the ALJ conflate the two. In analyzing the evidence Island Creek put forth to refute each prong of § 718.305(d)(1), the ALJ chose his words carefully. The ALJ applied the "in part" standard when determining whether Island Creek successfully rebutted the first prong of the presumption, § 718.305(d)(1)(i), and reserved the "rule out" standard for reviewing the second rebuttal prong, § 718.305(d)(1)(ii). We agree with that approach and with the meaningful nature of those distinctions. Unlike when the "rule out" standard applies, an employer may prevail under the not "in part" standard by showing that coal-dust exposure had no more than a *de minimis* impact on the miner's lung impairment. *See Arch on the Green*, 761 F.3d at 600.

*      *      *      *      *

While *Arch on the Green* admirably reconciles competing standards within the Act's regulations, the Department may consider amending its regulations to clarify matters. If the Department intended to apply § 718.203 to the rebuttal of clinical pneumoconiosis only, § 718.203 should say so expressly. If, on the other hand, as we have concluded here, the Department intends § 718.203 to apply to both clinical and legal pneumoconiosis, it should alter § 718.305(d)(1)(i) to harmonize the two clauses. And if it is the latter, the Department should clarify what showing an employer must make to rebut the presumption in favor of the miner, specifically, whether the not "in part" standard, contrary to our conclusion here, is in fact a "rule out" standard.

### *The ALJ Properly Evaluated The Opinions Of Drs. Selby, Tuteur, and Culbertson.*

Island Creek also disputes the ALJ's substantive finding that Island Creek failed to rebut the presumption that Young had legal pneumoconiosis. Nine doctors provided medical reports concerning Young's condition. In ruling against Island Creek, the ALJ found that the opinions of three of those doctors—Drs. Selby, Culbertson, and Tuteur—failed to explain sufficiently why Young's lung impairment was not due, at least in part, to his exposure to coal-mine dust. Before

the Board, Island Creek argued that the ALJ's reasons for discrediting the opinions of Drs. Selby, Tuteur, and Culbertson were invalid. The Board disagreed and held that substantial evidence supported the ALJ's findings. We agree.

At issue here are the ALJ's credibility determinations. Island Creek challenges the weight the ALJ gave to particular medical opinions, an analysis that typically turns on credibility evaluations. But generally speaking, we leave those determinations to the ALJ's expertise. We will not disturb those determinations so long as the ALJ acts reasonably. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1072 (6th Cir. 2013).

Island Creek takes issue with the ALJ's reasons for discounting Drs. Selby, Tuteur, and Culbertson. Start with Dr. Selby. By our count, the ALJ gave at least seven reasons for rejecting Dr. Selby's opinion that Young's emphysema was not caused by coal-dust exposure. Chief among those criticisms was Dr. Selby's conflicting opinions. Dr. Selby testified both that (1) pneumoconiosis can be a latent and progressive disease and (2) that Young's impairment could not be due to coal dust because symptoms for pneumoconiosis will not "suddenly 'jump in' several years after cessation of exposure." But the latter opinion conflicts with the former. Equally troubling, it also conflicts with regulations recognizing pneumoconiosis as a latent disease that may develop after coal-dust exposure ends. 20 C.F.R. § 718.201(c). We routinely uphold the rejection of testimony on credibility grounds where the testimony offers a medical opinion that conflicts with these regulations. *See, e.g.*, *Bryan*, 937 F.3d at 759 (6th Cir. 2019).

Dr. Culbertson, Young's treating pulmonologist, had similar inconsistencies in his report. For instance, he diagnosed Young with COPD, a respiratory impairment, attributable solely to smoking. Yet while Dr. Culbertson ruled out coal-mine-dust exposure as the cause of Young's COPD, he acknowledged that such exposure could be an aggravating factor to Young's respiratory impairment. And the latter is highly relevant to what constitutes "legal pneumoconiosis," something the ALJ found that Dr. Culbertson "made it clear he did not understand." As such, the ALJ acted well within his purview in deciding that Dr. Culbertson's inconsistent statements undermined his findings. The ALJ was equally justified in ultimately discrediting Dr. Culbertson's opinion. *See Wilkerson*, 910 F.3d at 259.

The ALJ likewise rejected Dr. Tuteur's testimony. That testimony centered on statistical data and analysis. Dr. Tuteur concluded that Young likely did not suffer from legal pneumoconiosis because only a small percentage of coal miners are so afflicted. The ALJ rejected this analysis on the basis that Dr. Tuteur did not provide an individualized explanation as to why Young himself was not one of the small percentage of miners with legal pneumoconiosis. This concern, it appears, is not a new one for Dr. Tuteur. Indeed, several of our sister circuits have previously warned mine operators, and Dr. Tuteur specifically, that an appellate court will not disturb an ALJ's reasonable rejection of Dr. Tuteur's statistical methods for failing to apply them to the individual claimant. *See, e.g.*, *Energy W. Mining Co. v. Estate of Blackburn*, 857 F.3d 817, 829–30 (10th Cir. 2017); *Consolidation Coal Co. v. Dir., Office of Workers' Comp. Programs*, 521 F.3d 723, 726 (7th Cir. 2008). Against this factual and legal backdrop, the ALJ's criticisms of Dr. Tuteur's opinion were well within the ALJ's discretion. The decision to discredit his findings was thus supported by substantial evidence.

All told, because the ALJ reasonably weighed the medical opinions presented and provided thorough explanations for his credibility determinations, Island Creek has failed to rebut the statutory presumption of pneumoconiosis. The Board pointed to substantial evidence in the record to support that determination, meaning that Young is entitled to benefits.

### III.  CONCLUSION

For these reasons, the petition for review is **DENIED**.