NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0151n.06

No. 22-3138

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 31, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ISLAND CREEK KENTUCKY MINING, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD, UNITED |
| CATHY GAMBLIN, et al., | ) ) | STATES DEPARTMENT OF LABOR |
| Respondents. | ) | |

OPINION

Before: SILER, NALBANDIAN, and READLER, Circuit Judges.

SILER, Circuit Judge. For at least 28 years, Darold Gamblin ("Gamblin") worked in coal mines, including as a safety inspector for Island Creek Kentucky Mining ("Island Creek" or "Petitioner"). In 2012, nine years after he retired from his career in the mining industry, Gamblin filed for disability benefits under the Black Lung Benefits Act ("the Act"). 30 U.S.C. §§ 901–45. The Act presumes that any miner who is totally disabled by a lung impairment and who, like Gamblin, worked for more than 15 years in an underground coal mine, has pneumoconiosis—or, as it is more commonly known, black lung disease. The Act also presumes that pneumoconiosis caused the miner's lung impairment. The Administrative Law Judge ("ALJ") found that Island Creek did not overcome the presumption in favor of granting Gamblin disability benefits, and the Benefits Review Board affirmed. Because the ALJ's findings are supported by substantial evidence and the proceedings were conducted in accordance with the proper standards of review, we **DENY** Island Creek's petition for review.

No. 22-3138, *Island Creek Ky. Mining v. Gamblin, et al.*

**I.**

Gamblin was employed in the coal mining industry for at least 28 years. He retired in 2003 and filed for benefits under the Act in 2012, after he was diagnosed with lung cancer. He died in 2014. His wife, Cathy Gamblin, then filed for survivor's benefits under the same Act. In 2014, she was awarded survivor's benefits, and, in response, Island Creek requested a hearing in front of an ALJ.[1] The parties stipulated that Gamblin was a miner who worked underground for 27 years and that he smoked between a half pack and two packs of cigarettes daily for 61 years. During his career, Gamblin's work required regular exposure to coal dust. He developed a consistent cough and had difficulty breathing. The parties vigorously dispute the extent of respiratory damage caused by Gamblin's exposure to coal dust. Island Creek argues that Gamblin's smoking habit and lung cancer, not coal dust exposure, caused what was presumed to be pneumoconiosis.

The federal regulatory scheme under the Act provides compensation to miners disabled by pneumoconiosis, "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The ALJ concluded that, because Gamblin worked for at least fifteen years as an underground coal miner and was totally disabled by his lung impairment, he was presumed to be disabled due to pneumoconiosis. *See* 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b)(1), (c)(1).

After reviewing medical evidence and the reports of seven medical doctors, the ALJ concluded that Island Creek did not rebut the statutory presumption of pneumoconiosis and

---

[1] Prior to Gamblin's death, he was also awarded benefits, and Island Creek requested a hearing before an ALJ. The two claims were consolidated, and in 2018, an ALJ awarded benefits for both the minor's and the survivor's claims. But the ALJ decision granting benefits was vacated pursuant to *Lucia v. SEC*, 585 U.S. __, 138 S. Ct. 2044 (2018), because the ALJ was improperly appointed. On remand to a different ALJ, the parties agreed to proceed with the record as it already existed. Thus, the second ALJ did not hold an additional hearing and ruled based on the prior testimony.

awarded survivor's benefits.  The Benefits Review Board affirmed, and Island Creek then filed a petition for review in this court.

**II.**

We review the Board's legal conclusions de novo.  *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018) (citing *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 633 (6th Cir. 2009)).  We analyze whether the Board properly applied the deferential "substantial evidence" test to the ALJ's findings.  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 754–55 (6th Cir. 2019) (citing *Wilkerson*, 910 F.3d at 257; 33 U.S.C. § 921(b)(3)).

**III.**

To be eligible for benefits under the Act, the miner must establish four facts:

(1) that he had pneumoconiosis;
(2) that his pneumoconiosis arose "out of coal mine employment";
(3) that he was "totally disabled"; and
(4) that his "pneumoconiosis contribute[d] to the total disability."

*Wilkerson*, 910 F.3d at 257 (citing 20 C.F.R. § 725.202(d)(2)).  For a miner who was employed in underground coal mining for at least 15 years, and "has evidence of a totally disabling respiratory or pulmonary impairment, it is presumed that pneumoconiosis caused the miner's total disability." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 403 (6th Cir. 2020); 20 C.F.R. § 718.305(b)(1), (c)(1).  Once a miner proves that he is presumptively entitled to benefits, the mine operator may provide evidence to rebut that presumption.  *See* 20 C.F.R. § 718.305(d); 30 U.S.C. § 921(c)(4).

A mine operator has two paths to rebut this presumption.  *Bryan*, 937 F.3d at 757.  "Under the first path, the operator must show that the miner did not have pneumoconiosis.  This path requires the operator to prove that the miner had neither *clinical* pneumoconiosis (diseases that the medical community recognizes as pneumoconiosis) nor *legal* pneumoconiosis (a broader category of lung impairments that are significantly related to, or substantively aggravated by, coal dust)."

*Bryan*, 937 F.3d at 757–58 (citations omitted); *see* 20 C.F.R. § 718.305(d)(1); *Young*, 947 F.3d at 404–05 (noting that "significantly related to" and "in part" are interchangeable standards for assessing whether a miner has legal pneumoconiosis). "Under the second path, the operator must show that 'no part of the miner's respiratory or pulmonary total disability was caused by' pneumoconiosis." *Bryan*, 937 F.3d at 758 (quoting 20 C.F.R. § 718.305(d)(1)(ii)).

## IV.

This appeal concerns whether Island Creek successfully rebutted the presumption that Gamblin was totally disabled due to pneumoconiosis. The parties agree that Gamblin is entitled to the rebuttable presumption that he was totally disabled due to pneumoconiosis. He worked underground as a coal miner for 27 years, and both pulmonary-function studies and medical-opinion evidence supported the ALJ's finding that he was totally disabled prior to his death. But Island Creek believes remand is required for the ALJ to reconsider whether it successfully rebutted the presumption.

Island Creek lays out three main arguments for why this case should be remanded to the ALJ for reconsideration. First, it argues the ALJ failed to explain why the presumption of clinical pneumoconiosis was unrebutted. Second, it asserts that remand is required because the ALJ failed to explain why he credited the opinions of some medical experts regarding legal pneumoconiosis over others, and the ALJ's reasons for discrediting some opinions were invalid. Third, it argues that remand is required because the ALJ failed to explain why he did not weigh medical evidence that cuts in favor of Island Creek's position over other evidence that cuts against it. As we explain below, it is unnecessary to reach Island Creek's first argument. As to its second argument, to the extent that Island Creek asks the court to reweigh evidence, we generally leave credibility determinations to the ALJ's expertise, so long as the ALJ acted reasonably. *Young*, 947 F.3d at 408 (citing *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1072 (6th Cir. 2013)). In this case, the

ALJ acted reasonably. The ALJ's findings were based on substantial evidence, and he applied the correct legal standards. We address the three issues presented in turn.

### 1. Clinical Pneumoconiosis.

Island Creek first argues that the ALJ did not sufficiently explain why Island Creek failed to rebut the presumption that Gamblin had clinical pneumoconiosis. The Board did not address this argument because it affirmed the ALJ's findings on legal pneumoconiosis. *See Bryan*, 937 F.3d at 757–58 (under the first path to rebutting the presumption, the mine operator needs to prove the miner does not have clinical or legal pneumoconiosis). Because, as explained below, we agree with the Board that the ALJ's credibility findings are supported by substantial evidence with respect to legal pneumoconiosis, we decline to address its clinical pneumoconiosis argument.

### 2. Legal Pneumoconiosis.

Island Creek next argues that the ALJ improperly credited the scientific validity of Gamblin's expert's opinions. The ALJ credited Drs. Sood, Chavda, and Houser, who all concluded that Gamblin's respiratory issues were caused by a combination of his lengthy history as a smoker and coal miner. This argument is meritless for two reasons. First, the ALJ explained in detail why he relied on some medical opinions in lieu of others. *Ogle*, 737 F.3d at 1072 (explaining that we tend not to reassess the weight given to medical experts especially when, as here, the ALJ's findings are reasonable). And second, any error would have been harmless because Island Creek had no affirmative evidence of its own that could rebut the presumption.

Island Creek's argument is simple. It asserts that "[t]he [ALJ's] decision is deficient as it fails to explain why Dr. Sood's, Dr. Houser's, and Dr. Chavda's diagnoses merit weight but Dr. Selby's and Dr. Tuteur's contrary diagnoses do not." Island Creek believes that the ALJ failed to address its arguments against Dr. Sood's methodology and Dr. Chavda's and Dr. Houser's failures to consider all of the relevant evidence.

But regardless, even if Island Creek sufficiently discredited all of Gamblin's experts, Island Creek still could not have rebutted the presumption of pneumoconiosis without credible experts of its own. On this point, Island Creek argues that the ALJ did not provide a valid reason for rejecting Drs. Selby and Tuteur's assessment that Gamblin was not suffering from legal pneumoconiosis and improperly discounted their evidence. Drs. Selby and Tuteur opined that Gamblin had chronic obstructive pulmonary disease (COPD) due to smoking and unrelated to coal mine dust exposure. But the ALJ did account for Dr. Selby's and Dr. Tuteur's opinions. In his well-reasoned, 36-page order, the ALJ provided extensive background on each of the medical experts, their findings, and why he found the opinions of some more compelling than others. He found that Drs. Selby and Tuteur "failed to adequately explain why Gamblin's significant history of coal dust exposure was not a contributing or aggravating factor to his respiratory disease . . . [and] are therefore given little weight." The ALJ backed up this finding with several reasons. For example, as noted by the ALJ, Dr. Tuteur stated that both smoking and coal dust exposure may cause COPD but that "the clinical picture, physical examination, PFTs, and x-rays do not allow for differentiation" between these two potential etiologies. He also stated, "[Dr.] Tuteur's reliance on only statistical probabilities undermines his conclusion that Gamblin did not have legal pneumoconiosis, and his opinion that Mr. Gamblin's obstructive disease was due to smoking, because he had statistically less risk is insufficient to establish rebuttal." The ALJ made a similar finding regarding Dr. Selby. This is an entirely reasonable parsing of the evidence and, as such, should not be disturbed.

Even without accounting for the ALJ's parsing of Drs. Selby and Tuteur's opinions, this court has previously held, specifically in regard to the statistical analysis used by these two doctors, "that an appellate court will not disturb an ALJ's reasonable rejection of Dr. Tuteur's statistical methods for failing to apply them to the individual claimant." *Young*, 947 F.3d at 408. The court in *Young* continued, "[a]gainst this factual and legal backdrop, the ALJ's criticisms of Dr. Tuteur's

opinion were well within the ALJ's discretion." *Id*. at 409. We agree and, for the foregoing reasons, hold that the ALJ's decision was based on substantial evidence and in accordance with the proper standards.[2]

### 3. Survivor's Claim.

Finally, Island Creek contests whether the ALJ correctly determined that pneumoconiosis caused Mr. Gamblin's death. This is a relevant consideration in determining how a mine operator can rebut the presumption of pneumoconiosis under § 718.305 in a claim filed by a survivor. *See id*. § 718.305(d)(2)(ii) (the second path to rebut the presumption when dealing with a survivor's claim is that "no part of the miner's death was caused by pneumoconiosis" instead of "no part of the miner's . . . disability was caused by pneumoconiosis" under (d)(1)(ii)). But the Board affirmed the ALJ's award of benefits in the survivor's claim on an alternate basis under Section 422(*l*) of the Act. *See* 30 U.S.C. § 932(*l*). Because Island Creek does not raise any arguments about this alternative basis, we decline to consider this issue.

The petition for review is **DENIED**.

---

[2] Island Creek makes passing statements about disability causation—the second path to rebut the presumption that Gamblin was totally disabled due to pneumoconiosis. Recall that "[u]nder the second path, the operator must show that 'no part of the miner's respiratory or pulmonary total disability was caused by' pneumoconiosis." *Bryan*, 937 F.3d at 758 (quoting 20 C.F.R. § 718.305(d)(1)(ii)). The Board affirmed the ALJ's determination that Island Creek did not disprove that Gamblin's total disability is unrelated to legal pneumoconiosis because Island creek did not "raise[] . . . specific arguments on disability causation apart from its assertion that the ALJ erred in finding it failed to disprove the existence of legal pneumoconiosis[.]" In its briefing to this court, Island Creek argues that this argument hinges on a reshuffling of credibility amongst the experts. Even if this argument was not waived, because we determined that the ALJ's findings with respect to Island Creek's experts were supported by substantial evidence, we would defer to the ALJ's credibility determinations. *Ogle*, 737 F.3d at 1072.