NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0188n.06

No. 25-3451

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SEQUOIA ENERGY, LLC; NATIONAL UNION FIRE/AIG,

    Petitioners,

v.

AMY MITCHELL; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR,

    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Apr 28, 2026
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVEIW FROM THE BENEFITS REVIEW BOARD

OPINION

Before:  READLER, DAVIS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Sequoia Energy, LLC petitions for review of a Benefits Review Board decision affirming the award of federal coal miners' benefits to now-deceased miner Delbert Mitchell and his surviving spouse Amy Mitchell. But Sequoia has not rebutted the presumption that Mitchell was entitled to benefits due to his over 15 years of work in coal mines and total pulmonary disability. So we deny the petition for review.

Mitchell worked for at least 22 years in an underground coal mine. A substantial portion of that work was in Sequoia's employ. In Mitchell's last role, he worked as a maintenance foreman, crawling in the mines for over six hours a day and lifting up to 100 pounds. Mitchell stopped working as a coal miner in 2015, based on a diagnosis of chronic obstructive pulmonary disease. An examining doctor would later find that Mitchell's "pulmonary impairment" was "very severe." AR 170.

Mitchell filed a claim for benefits under the Black Lung Benefits Act in 2019. The Act provides federal benefits to qualifying coal miners and their survivors. 30 U.S.C. §§ 901, 932(*l*). Eligibility for benefits turns on a miner's pneumoconiosis, which the Act defines as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." *Id.* § 902(b). Specifically, to receive benefits, Mitchell was required to show four facts: (1) he was "totally disabled"; (2) he had pneumoconiosis; (3) his pneumoconiosis "arose out of [his] coal mine employment"; and (4) his pneumoconiosis "contribute[d]" to his total disability. *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018) (quoting 20 C.F.R. § 725.202(d)(2)). We note that because the definition of pneumoconiosis provides that the disease "aris[es] out of coal mine employment," 30 U.S.C. § 902(b), the second and third elements often overlap. *See Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 597–98 (6th Cir. 2014).

Mitchell's claim invoked a powerful burden-shifting mechanism sometimes referred to as the "fifteen-year presumption." *See Incoal, Inc. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 123 F.4th 808, 814 (6th Cir. 2024). The presumption provides that if a miner shows they were "employed for fifteen years or more" in a qualifying mine and "demonstrates the existence of a totally disabling respiratory or pulmonary impairment," there is "a rebuttable presumption" that the "miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305. In other words, once a miner with sufficient qualifying work proves they have a total pulmonary disability, the remaining three elements of their claim are presumed. *Incoal*, 123 F.4th at 814 (quoting *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1069 (6th Cir. 2013)).

Here, an Administrative Law Judge ("ALJ") determined, and Sequoia does not contest, that Mitchell had sufficient qualifying work and a total pulmonary disability. Thus, all agree that Mitchell was presumptively entitled to benefits.

Sequoia has two ways to rebut the fifteen-year presumption. It could prove, *first*, that Mitchell did not have pneumoconiosis, or *second*, that his pneumoconiosis did not cause any part of his disability. 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(d)(1)(i)–(ii); *see also Island Creek Coal Co. v. Young*, 947 F.3d 399, 403–04 (6th Cir. 2020). But rebutting the presumption under either pathway is a tall order. To show that Mitchell did not have pneumoconiosis, Sequoia must prove that "coal-dust exposure had no more than a *de minimis* impact" on Mitchell's pulmonary impairment. *Young*, 947 F.3d at 407; *see also* 20 C.F.R. § 718.305(d)(1)(i). And to show that pneumoconiosis did not cause any part of Mitchell's disability, Sequoia must prove that pneumoconiosis had "no part"—not even a *de minimis* one—in Mitchell's disability. *Young*, 947 F.3d at 407; *see also* 20 C.F.R. § 718.305(d)(1)(ii).

Before the ALJ, Sequoia attempted to rebut the presumption with opinions from two doctors, Dr. Abdul Dahhan and Dr. Bruce Broudy. Both doctors opined that Mitchell did not have pneumoconiosis and that, even if he had pneumoconiosis, it did not contribute to his disability. As relevant here, Dr. Dahhan and Dr. Broudy explained that if Mitchell had pneumoconiosis, they would have expected to see substantial abnormalities on a chest x-ray, but Mitchell's x-ray results were clear. They also opined that the cause of Mitchell's pulmonary disability was his obesity and use of prescribed narcotics, rather than his work as a miner.

The ALJ disagreed. With respect to the x-ray issue, the ALJ explained that a miner may have pneumoconiosis even if they do not have any substantial abnormalities on an x-ray. Additionally, the ALJ found the other bases for Dr. Dahhan and Dr. Broudy's opinions speculative,

unconvincing, or demonstrably incorrect. The ALJ awarded benefits, and the Benefits Review Board affirmed.

Sadly, after the decision of the Benefits Review Board, Mitchell passed away. Sequoia Energy then petitioned this court for review, and Mitchell's surviving spouse Amy, who receives survivorship benefits, intervened to defend the award.

The only issue on appeal is whether the ALJ correctly determined that Sequoia failed to rebut the fifteen-year presumption. Sequoia argues that the ALJ erred by (1) discrediting Dr. Dahhan and Dr. Broudy's opinions regarding the negative x-ray results; and (2) discrediting the doctors' opinions that Mitchell's disability was due to his obesity and use of prescription narcotics. As a threshold matter, we note that Sequoia was required to raise its arguments to the Benefits Review Board to preserve them for our review, but did not do so for its second argument. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 750 (6th Cir. 2019); *Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 466 (6th Cir. 2022). Sequoia has thus forfeited its argument that Mitchell's disability was due to his obesity and use of prescription narcotics. *See Bryan*, 937 F.3d at 750. Accordingly, we consider only Sequoia's first argument: whether the ALJ erred in determining that Dr. Dahhan and Dr. Broudy's opinions of Mitchell's x-rays did not rebut the fifteen-year presumption.

We review the ALJ's decision as to the x-rays for substantial evidence. *S. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 128 F.4th 809, 816 (6th Cir. 2025). Our review is "exceedingly narrow." *Huscoal, Inc. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 48 F.4th 480, 489 (6th Cir. 2022) (citation omitted). We affirm the ALJ's weighing of the evidence if a "reasonable mind" could reach the ALJ's conclusion. *Bryan*, 937 F.3d at 755. We do not disturb the ALJ's decision to discredit Sequoia's doctors' opinions unless the ALJ failed to "adequately explain[]" why he discounted them. *Ogle*, 737 F.3d at 1069, 1072.

Substantial evidence supports the ALJ's handling of Dr. Dahhan and Dr. Broudy's opinions interpreting the negative x-ray results. The ALJ correctly explained that the Act recognizes two types of qualifying pneumoconiosis: clinical pneumoconiosis and legal pneumoconiosis. Clinical pneumoconiosis means diseases characterized by "fibrotic reaction[s]" in the lungs due to coal dust particulates, while legal pneumoconiosis is a broader category that includes "any chronic lung disease or impairment . . . arising out of coal mine employment." 20 C.F.R. § 718.201(a); *see also S. Ohio Coal Co.*, 128 F.4th at 814. Although the ALJ determined that Mitchell did not have clinical pneumoconiosis, he properly observed that the negative x-rays did not preclude Mitchell from having legal pneumoconiosis. *See Ogle*, 737 F.3d at 1074. Thus, the ALJ determined that the x-rays did not disprove legal pneumoconiosis, nor prove that Mitchell's pneumoconiosis had no impact on his total disability. That determination was reasonable and adequately explained. Indeed, as we have previously concluded, an ALJ may "devalue" doctors' opinions to the extent they "relied heavily on negative x-ray findings . . . to conclude a lack of legal pneumoconiosis." *Id.*

Sequoia argues that the ALJ misinterpreted Dr. Dahhan and Dr. Broudy's testimony. It contends that while Dr. Dahhan and Dr. Broudy opined that the negative x-rays were merely a factor tending to disprove legal pneumoconiosis, the ALJ misunderstood them as opining that the negative x-rays precluded legal pneumoconiosis. This argument is unconvincing. For one thing, the ALJ did not mischaracterize the doctors' opinions, but simply explained that he did not find "persuasive" the doctors' "reliance o[n] the negative x-rays" as a reason to rule out legal pneumoconiosis. AR 179. Moreover, Sequoia's argument, even were it correct, does not lead to a different result. Sequoia's own doctors recognize that the x-rays do not disprove pneumoconiosis under the Act. Yet Sequoia had the burden to disprove pneumoconiosis or that pneumoconiosis contributed to Mitchell's total disability. Regardless of any concern as to whether the ALJ

misconstrued the doctors' opinions about the x-rays, Sequoia has not rebutted the fifteen-year presumption that Mitchell was entitled to benefits.

We deny the petition for review.