NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0511n.06

Case No. 15-2598

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 26, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TALMER BANK AND TRUST, a Michigan banking corporation, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| MINTON FIRM, P.C., an Illinois professional corporation; MICHAEL H. MINTON, an individual, | ) ) ) ) ) | |
| Defendants - Third-Party Plaintiffs/Appellants, | ) ) ) | |
| v. | ) ) | O P I N I O N |
| GINA STRAUCH; THE TALON GROUP; CARIE O'DONNELL; COLDWELL BANKER REAL ESTATE CORP., | ) ) ) ) ) | |
| Third-Party Defendants-Appellees, | ) ) | |
| GRAND BEACH REAL ESTATE INVESTMENT, LLC, an Illinois limited liability company, | ) ) ) ) | |
| Defendant. | ) ) | |

BEFORE: CLAY, ROGERS, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** This is a diversity action where the third-party plaintiff/appellant brings numerous arguments that he did not raise before the district court. For the reasons below, we AFFIRM.

**I**

Michael H. Minton is an Illinois-based practicing attorney with over thirty years of experience. [R. 129, Opinion, PID 1046.] In 2005, Carie O'Donnell, a Michigan-licensed real estate agent with Coldwell Banker, approached Minton to discuss "flipping" a property in Three Oaks, Michigan, in Berrien County. [R. 129, Opinion, PID 1046.] In doing so, O'Donnell mentioned that Minton should consider purchasing the property through a limited liability company (LLC) "for liability purposes" and "financial reasons," so if Minton "ever lost the building at least it was not him, you know." R. 112-24, O'Donnell Dep., PID 900–901. In January 2006, Minton personally agreed to a "Buy Sell" Agreement to purchase the property for $415,000.[1] [R. 129, Opinion, PID 1046.] In April 2006, Minton signed a Loan Commitment to finance his acquisition of the property with First Place Bank, the predecessor-in-interest to named plaintiff Talmer Bank and Trust.

The parties scheduled closing for May 26, 2006, at the Michigan office of The Talon Group, where third-party defendant Gina Strauch was employed as a notary. R. 129, Dist. Ct. Opn., PID 1046. Because Minton was unable to attend the closing, he signed a General Power of Attorney (POA) on May 25th as "Michael H. Minton"—without specifying whether he was signing in his personal capacity, as owner of Grand Beach Real Estate Investment, LLC (the LLC created for the purchase), or on behalf of his law firm, The Minton Firm. [R. 112-4, POA, PID 733.] The POA appointed O'Donnell as his attorney-in-fact and invested her with significant authority, including the power to "enter into binding contracts on [Minton's] behalf" and the right to "sell, exchange, buy, invest, or reinvest any assets" including "income producing

---

[1] The record does not indicate when, but eventually Minton established "Grand Beach Real Estate Investment, LLC," a single-member LLC owned by Minton, to receive title to the property. R. 129, Opinion, PID 1048. Though Minton signed the "Buy Sell" agreement, Grand Beach took title to the property and was the ultimate borrower on the loan. O'Donnell acted as a dual agent for the buyer (Minton) and the seller, and Minton received half of O'Donnell's commission as an "attorney consultant fee." R. 112-5, Minton Dep., PID 774.

- 2 -

. . . assets" such as the property in question. R. 112-4, POA, PID 733. The POA expressly limited O'Donnell's liability when acting pursuant to its authority, but explicitly stated that O'Donnell would remain liable for "willful misconduct or the failure to act in good faith while acting under the authority of the Power of Attorney." R. 112-4, POA, PID 733. Minton read and signed the POA, then faxed it back to O'Donnell in Michigan on May 26, 2006.

At closing, O'Donnell signed what she characterized as a "big pile of paperwork" without either reading or fully understanding the documents she signed. R. 112-24, O'Donnell Dep., PID 928. As a result, she bound Grand Beach to a commercial loan agreement, a promissory note, and as title holder on the mortgage. [R. 129, Opinion at 3, PID 1047.] She also bound both Minton and the Minton Firm as guarantors to the loan agreement and an attendant promissory note. [*Id.*] Strauch then notarized the POA, Mortgage, and Assignment of Leases and Rents, adding minor phrases to ensure the documents could be properly recorded. [R. 112-24, O'Donnell Dep., PID 930–32.] Shortly after closing, Strauch recorded an Affidavit of Lost Document in lieu of the originally signed POA with the Berrien County Register of Deeds to properly record the mortgage because the POA was still in Minton's possession. R. 112-6, Strauch Dep. PID 789.

About five years later, on May 6, 2011, Grand Beach presumably stopped servicing the loan and the bank sent a Loan Maturity Notice to "Grand Beach Real Estate, Attention: Michael Minton, The Minton Group," at The Minton Firm's address. [R. 129, Opinion, PID 1048.] The bank followed up with a Loan Late Notice in June, and also a Loan Delinquent Notice in July. On August 9, 2011, Grand Beach formally defaulted on the promissory note; the bank accelerated the loan and notified The Minton Firm and Michael H. Minton as guarantors of a deficiency due and owing after a foreclosure of the property at a sheriff's sale. [129, Opinion,

PID 1048.] Before these notices, Minton claims to have never known that he could be personally liable as a result of the guarantees, and testified that O'Donnell knew that "no transaction would take place if there was either a corporate or a personal guarantee[.]" R. 112-5, Minton Dep. 748. In her deposition, O'Donnell admitted that she did not know she was signing a personal guaranty [PID 933], that she "would have never signed [a personal guarantee]" had she read all the documents at closing, that she and Minton "had [an] understanding that" the transaction was solely for Grand Beach to acquire the property, and that, because Minton "was taking title as Grand Beach," she did not "ha[ve] the authority . . . to execute a personal guaranty document on behalf of Mr. Minton." R. 112-24, O'Donnell Dep., PID 929, 934.

On June 8, 2012, Ardent Services Corporation, who purchased the defaulted mortgage from First Bank, filed a complaint against Defendants Grand Beach, The Minton Firm, and Minton personally (referred to collectively as "Minton") seeking to collect the deficiency on the loan pursuant to the promissory note and the guarantees. R. 1, Complaint, PID 1–65.[2] Minton then brought this third-party complaint against O'Donnell, Strauch, and their employers, alleging that (1) O'Donnell acted "in contravention of the limited agency agreement [i.e. the POA] and authority provided by Grand Beach" [R. 24, Complaint at 9, PID 156], (2) that O'Donnell's "indifference to the importance of the documents and carelessness" in signing the guarantees constituted "willful misconduct" in violation of the POA's liability provision [R. 126, Brief in Opposition to O'Donnell's Motion for Summary Judgment at 9, PID 1025], and (3) that Strauch improperly notarized the POA.

The district court granted summary judgment in favor of Strauch and O'Donnell on all of Minton's claims. The district court reasoned that, because Strauch was not the proximate cause

---

[2] Named plaintiff *Talmer Bank and Trust* obtained the subjected defaulted loan on January 20, 2015 from the originally-named plaintiff *Ardent Services Corporation*. Minton Br. at 3.

of Minton's injuries, neither she nor her employer was liable. [R. 129, Opinion, PID 1055.] The court then turned to Minton's arguments against O'Donnell, holding that, because the POA was "precise and unambiguous" in granting O'Donnell clear authority to sign the guarantees and bind Minton and the Minton Firm, the parol evidence rule barred looking at any evidence outside of the agreement that could narrow the scope of O'Donnell's authority. R. 129, Opinion, PID 1056–1059. However, the district court did not rule on Minton's argument that O'Donnell's "willful misconduct" violated the POA's liability provision. Minton appealed.

The parties agree that the substantive law of Michigan governs, and we review the district court's order granting summary judgment *de novo*. *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999) (citation omitted).

## II

At the outset, we point out that Minton brings numerous arguments on appeal that he did not raise before the district court or discussed only in a perfunctory manner. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (quoting *Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997)). Minton provides no explanation as to why he failed to raise certain arguments below; rather, he argues that all arguments and issues were adequately pled below and need not be "spelled out" for third-party defendants. Minton Reply Br. at 1–2. For most of them—including certain crucial arguments—we disagree.

### 1. Breach of Fiduciary Duty As A Real Estate Agent

Minton's primary argument on appeal is that, notwithstanding the scope of the POA, O'Donnell owed Minton fiduciary duties "as a real estate agent," and that these duties "governed

her conduct even when acting under the authority granted by the POA." Minton Br. at 20–21. He alleges that, by "signing the guarantees without reading them in violation of her admitted instructions," O'Donnell breached those fiduciary duties by failing to "comply with all lawful instructions received from the principal" and did not use "reasonable efforts to provide the principal with facts that the agent knows . . . the principal would wish to have." Minton Br. at 20–24, 26 (citing Restatement (Third) of Agency §§ 8.09, 8.11 (2006)).

Minton claims that the district court overlooked this argument, "wholly fail[ing] to analyze the fiduciary duties owed by Ms. O'Donnell," Minton Br. at 20. Minton is correct, but fails to note that the district court "overlooked" this argument because the argument was never presented below. Rather, his claim before the district court focused almost exclusively on whether O'Donnell exceeded her "limited authority" under the POA and, notwithstanding the breadth of the POA, whether O'Donnell or her employer was liable because she exceeded the scope of her "limited agency relationship." R. 156, Complaint, PID 156; *see also* R. 126, Brief in Opposition to O'Donnell's Motion for Summary Judgment at 4–6, PID 1020–22. Limited to the arguments Minton presented, it is little wonder that the district court looked at the POA, found that it was unambiguous and should be construed broadly, and held that O'Donnell's actions were within the scope of the POA's authority. The four corners of the contract are clear that the scope of O'Donnell's authority under the POA was extremely broad. Thus, it was unnecessary to consider the unraised question of whether O'Donnell violated any freestanding or independent fiduciary duty. R. 129, Opinion at 13–14, PID 1057–1058.

Minton is unable to point to any pleadings showing he raised the "breach of fiduciary duty" argument before the district court. Minton Reply Br. at 3. His response to O'Donnell's motion for summary judgment, by far his most comprehensive submission to the district court,

never mentions "fiduciary," or "duty," or even "relationship." *See* R. 126, Brief in Opposition to Motion for Summary Judgment at 4–6, PID 1020–22. Minton clings to a threadbare allegation in his complaint that "the actions of O'Donnell constitute not only a violation of the limited agency relationship, but also a violation of the *fiduciary relationship* between O'Donnell and Grand Beach and or Minton." R. 24, Complaint at ¶ 46, PID 156 (emphasis added). These two words in one passing sentence of Minton's complaint cannot preserve an argument: "[t]o 'raise' an argument, a litigant must provide some minimal argumentation in favor of it," and we do not have that here. *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009) (citing *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1398–99 (6th Cir. 1995)).

At oral argument, Minton's counsel argued that he was simply putting a "spin" on the argument below. We disagree with this characterization and note that "[t]he appropriate method for adding new factual allegations to a complaint is not via an appellate brief, but by filing an amended complaint." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006). We therefore deem this argument forfeited and decline to consider it. *See Overstreet*, 305 F.3d at 578.[3]

### 2. Liability Provision Argument

Minton's attempts to spin arguments that he raised below do not stop there. The POA contained a general disclaimer of liability, but maintained that O'Donnell "shall be liable for [1] willful misconduct or [2] the failure to act in good faith while acting under the authority of

---

[3] We note that, even if Minton had not forfeited this argument, any fiduciary duty O'Donnell owed Minton as his real estate agent was likely offset by the liability disclaimer in the POA. *See* Restatement (Third) Of Agency § 8.08 (2006) (explaining that a fiduciary's general duties of care, competence, and diligence are "[s]ubject to any agreement with the principal"); Mich. Comp. Laws Ann. § 339.2517 ( "The obligations of a dual agent *are subject to any specific provisions set forth in any agreement* between the dual agent, the seller, and the buyer." (emphasis added)).

the Power of Attorney." R. 112-4, POA, PID 733. Before the district court, Minton argued that O'Donnell's actions constituted "willful misconduct," R. 126, Response to Motion for Summary Judgment at 8–9, PID 1024–25, but the court never considered or ruled on this issue. Instead, the district court appears to have conflated the question of whether O'Donnell had *authority* to act under the POA (she did) with whether, *when acting pursuant to that authority*, O'Donnell engaged in "willful misconduct" *or* failed "to act in good faith." R. 112-4, POA, PID 733. These are very different inquiries—the scope of the POA's authority is certainly the threshold question, but evaluating *the manner* in which O'Donnell exercised that scope is equally important, as it was an express provision of the POA. The district court's failure to consider the second question reads the liability provision out of the POA and is inconsistent with our typical approach to give "effect to all words, phrases, and clauses in interpreting a contract, avoiding interpretations that would render any part of the contract surplusage or nugatory." *Tabernacle-The New Testament Church v. State Farm Fire & Cas. Co.*, 616 F. App'x 802, 808 (6th Cir. 2015) (citing *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003)). Moreover, adopting the district court's reasoning could be perceived as blessing any conduct technically authorized by the POA—even something as extreme as selling Minton's personal residence for one dollar—regardless of whether such conduct could reasonably be characterized as "willful misconduct" or the "failure to act in good faith."

Still, we may consider only arguments that Minton raised in the district court *and* made on appeal. Surprisingly, Minton does not press the district court's failure to consider his "willful misconduct" argument on appeal, abandoning it in favor of a new argument that O'Donnell "failed to act in *good faith*." Minton Br. at 33–36. It's not a bad argument—when viewed in a light favorable to Minton, O'Donnell's failure to read the closing documents might conceivably

establish a genuine issue of fact as to whether she failed to act in good faith. But, as before, Minton failed to raise or develop this argument in the district court. Although his "willful misconduct" argument (raised only below) and his "failure to act in good faith" argument (raised only on appeal) both derive from the POA's liability provision, they are not one and the same.[4]

A court of appeals "is not compelled to hear, nor should it hear, an issue not presented to the district court unless reaching that issue serves an over-arching purpose beyond that of arriving at the correct result in an individual case." *Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 529 F. App'x 560, 564 (6th Cir. 2013) (quoting *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993)). Minton pleads no exceptional circumstance to justify his failure to argue in the district court that O'Donnell did not act in good faith, and he therefore has forfeited the argument. While we acknowledge that the district court failed to consider Minton's "willful misconduct" argument (which was raised below), his strategic choice to abandon it on appeal and cast his lot with O'Donnell's "failure to act in good faith" is fatal to that claim.[5]

---

[4] These arguments are somewhat related but require the application of different legal standards and attendant facts to substantiate them. For example, Minton defines "willful misconduct" "as an employee's 'obstate or perverse opposition to the will of an employer.'" R. 126, Response to Motion for Summary Judgment at 9, PID 1025 (citing *Detwiler v. Consumers Power Co.*, 252 Mich 79, 233 NW 350 (1930)). Of course, he offered no definition for "good faith" or argument regarding O'Donnell's "failure to act in good faith" below. On appeal, he defines "good faith" as the "observance of reasonable commercial standards of fair dealing in a given trade or business." Minton Br. at 34 (citing Black's Law Dictionary 762 (9th ed. 2009)). Evaluating whether O'Donnell showed a "perverse opposition to the will of an employer" is clearly different than evaluating whether O'Donnell observed "reasonable commercial standards." And if "willful misconduct" encompassed "failure to act in good faith," there would be no need to include both terms in the POA's liability provision.

[5] Although O'Donnell has arguably waived this forfeiture argument, her waiver does not bind us. While O'Donnell responded in her brief to the merits of Minton's "failure to act in good faith" argument, she did not argue that he had failed to raise it below. Like an appellant, an appellee can waive an argument by failing to brief it. *United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999). However, because we are free to affirm the district court on any basis supported by the record notwithstanding an appellee's waiver of an issue in its brief, *Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2000), O'Donnell's failure to point out that Minton's "failure to act in good faith" argument was forfeited is not grounds for reversing the district court.

### 3. Ambiguity Argument

Minton next argues that the POA was ambiguous because it was "signed by 'Michael H. Minton' without making any mention regarding in what capacity Mr. Minton was signing the POA." Minton Br. at 37. Minton seeks to introduce parol evidence establishing that all parties knew he signed the POA *only* on behalf of Grand Beach and that therefore O'Donnell did not have the authority under the POA to bind The Minton Firm or Minton to *anything*, much less the guarantees.[6] In granting summary judgment to O'Donnell, Minton claims that the district court erred by determining "that Mr. Minton was wearing three different hats when he signed the POA—including as the sole member of Grand Beach, the sole partner and president of The Minton Firm, and individually." Minton Br. at 36.

Minton inaccurately characterizes the district court's opinion. The district court never had a chance to consider which hat Minton had on when he signed the POA because, as with Minton's other appellate arguments, he did not argue in the district court that his signature was ambiguous. Minton never actually tells us where this argument was raised, but claims this issue was "expressly disputed by the parties to the POA" and cites to a fair number of items in the record. Minton Br. 37. A closer look at the referenced citations, however, shows that this argument was neither raised nor developed. Minton first cites his and O'Donnell's depositions, which certainly do not meet our standards for "raising" an argument. R. 112-5, Minton Dep., PID 753–754; R. 112-24, O'Donnell Dep. Minton next points to his third-party complaint, which never discussed ambiguity with respect to the POA's signature. *See* R. 24, Complaint, PID 155. The same goes for Minton's citation to the Pre-Motion Conference Request. R. 97, PID 661. We can hardly blame the district court for failing to determine which hat Minton was

---

[6] This seems to ignore the obvious point that signing as Michael H. Minton, without any limiting clarification, could easily be construed to extend authority to Minton personally and to Minton as the sole member of The Minton Firm.

wearing when Minton's head was buried in the sand—he never raised the argument, his pleadings were insufficient to place the parties on notice that this was an argument, and, for its part, the district court found that Minton's pleadings "[did] not identify any ambiguity" in the POA. R. 129, Dist. Ct. Opn. at 13, PID 1057.

### 4. Mutual Mistake Argument

Minton's final argument against O'Donnell is that he and O'Donnell were under a "mutual mistake" as the "parties intended for the POA to authorize Ms. O'Donnell to sign the necessary loan documents . . . on behalf of *only* [Grand Beach] as borrower." Minton Br. at 40. This argument was not raised in Minton's complaint, but was discussed somewhat in his response to third-party defendant's motion for summary judgment. R. 126, Response to Motion for Summary Judgment at 12–15, PID 1028–31. The district court did not consider it.

Reformation of an instrument is appropriate to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but due to mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties. *Mate v. Wolverine Mut. Ins. Co.*, 592 N.W.2d 379, 384 (Mich. Ct. App. 1998). The burden of establishing mutual mistake is upon the party who seeks reformation; the evidence must be convincing and must clearly establish the right to reformation. *Boboltz v. White*, No. 223504, 2001 WL 1388761, at *1 (Mich. Ct. App. Nov. 6, 2001) (citing *Youell v. Allen*, 18 Mich. 107, 109 (1869)).

Unpacking this argument, Minton claims that "the parties' mutual mistake [was] that the limitation of only [Grand Beach] being the principal is not reflected in the text of the POA." Minton Br. at 40. Put differently, Minton believes that *his* failure to include a limitation of the POA's authority—or to sign, say, as "Michael H. Minton, on behalf of Grand Beach"—is a

*mutual* mistake, and that we should reform the contract to fix it. This is a generous re-characterization of the argument as presented to the district court.[7] We are skeptical as to whether this is truly a cognizable "mistake" at all, let alone a mutual one. Minton, a practicing attorney of thirty years with at least some experience in commercial real estate, read and signed an extremely broad POA and now asks us to rescue him. That we will not do.

Under Michigan law, "courts are required to proceed with the utmost caution in exercising jurisdiction to reform written instruments." *Olsen v. Porter*, 539 N.W.2d 523, 525 (Mich. Ct. App. 1995). This caution is especially relevant given the "importance of certainty in instruments authorizing the conveyance of lands, and by the serious consequences likely to arise if it be determined that a power of attorney may mean one thing or another, as the tints of surrounding circumstances resting on parol testimony may vary." *Penfold v. Warner*, 55 N.W. 680, 680 (Mich. 1893). Because reformation is an exercise of the court's equitable powers, we may determine "which [] party should assume the loss" by "examining our notions of what is reasonable and just under all the circumstances." *Dingeman v. Reffitt*, 393 N.W.2d 632, 635 (Mich. Ct. App. 1986). Taking all of this into consideration, we believe it is "reasonable and just under all the circumstances" to decline reformation and require Minton to accept the POA as originally signed.

### 5. Conclusion of Minton's Claims Against O'Donnell

We recognize that Minton's appellate counsel was hamstrung by trial counsel's failure to raise and develop numerous arguments. However, even reading the pleadings below generously,

---

[7] Though Minton's complaint is silent on this issue, his Response to O'Donnell's Motion for Summary Judgment raises this "mutual mistake," albeit in a cursory manner. Minton claimed that both parties "believed the power of attorney to be a limited power of attorney not giving Carie O'Donnell the authority to sign personal or corporate guarantees" and asks that "parole evidence submitted by the parties to show their mutual mistake as to the breadth and intended use of the power of attorney document." R. 126, Response to Motion for Summary Judgment at 15, PID 1031. Rather than discussing the parties' "mistake" of Minton signing in the wrong capacity, this reads like more of the same argument challenging the scope of the POA—an argument the district court clearly rejected. *See* R. 129, Opinion at 13–14, PID 1057–1058.

appellate counsel has consistently raised new arguments and we decline to consider them on appeal. This appeal isn't simply a case where arguments are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," or where we are required to "put flesh on [the arguments'] bones," even though we routinely reject claims in such cases. *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997). Rather, most of these arguments never even materialized before the district court. We again reiterate that "[t]he appropriate method for adding new factual allegations to a complaint is not via an appellate brief, but by filing an amended complaint." *Harvey*, 453 F.3d at 328. For the reasons above, we AFFIRM the grant of summary judgment to third-party defendants Carie O'Donnell and Coldwell Banker Real Estate Corp.

## III

Minton finally argues that Gina Strauch improperly notarized the POA by signing it outside of his presence, and asserts that her conduct was the proximate cause of his injuries. Minton Br. at 41. We disagree.

*Hope v. Victor*, 162 N.W.2d 918, 920 (Mich. Ct. App. 1968), governs this case and offers two pertinent lessons: (1) breach of the office of notary does not give rise to an action unless the breach was the proximate cause of the injuries sustained; and (2) "an improper notarization should not be regarded as the proximate cause of the injury *where the one who purported to sign the document did in fact sign, and was prepared to properly swear before a notary . . . .*" Here, Minton does not argue that he did not sign the POA or was not "prepared to properly swear before" Strauch. He offers no persuasive reason as to why *Hope* should not govern here, and the cases he cites in opposition are distinguishable and unpersuasive. This is straightforward: Minton could not make the closing, so he signed the POA, asked for it to be notarized, accepted

that it would be done outside of his presence for his convenience, and "received the benefit of that convenience: he did not have to travel to Michigan to attend the closing and carry out the pro forma exercise of signing the documents." R. 129, Opinion at 11, PID 1055. We agree with the district court that Minton has failed to show that Strauch's actions were the proximate cause of his injury.

Minton finally alleges that Strauch prepared a "false" Affidavit of Lost Document and made "other alterations to the loan documents post-closing, which allowed the loan, including the improper guarantees, to be consummated." Minton Br. at 16. Though Minton refers to these allegations in his Statement of the Case on appeal, he makes no effort to develop them into arguments. [*Compare* Minton Br. at 12–13 *with* Minton Br. at 41–44.] In fact, his sole reference to these claims in his legal argument section is a throw-away sentence that "damages could have been avoided if Ms. Strauch had not undertaken her improper actions to notarize and record the purportedly 'lost' POA that otherwise could not have been recorded." Minton Br. at 44. In keeping with the theme of this case, this is insufficient and we affirm summary judgment to third-party defendants Strauch and The Talon Group. *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) ("We consider issues not fully developed and argued to be waived."); *see also* Fed. R. App. P. 28(a)(8).

## IV

For the reasons above, we AFFIRM.