**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0635n.06

Case No. 19-4098

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>ISLAND CREEK COAL COMPANY,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td>    Petitioner,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>WILLIAM L. BELT,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Respondent,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>DIRECTOR, OFFICE OF WORKERS'</td><td>)</td></tr>
<tr><td>COMPENSATION PROGRAMS, UNITED</td><td>)</td></tr>
<tr><td>STATES DEPARTMENT OF LABOR,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Party-in-Interest.</td><td>)</td></tr>
</table>

**FILED**
Nov 06, 2020
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

**O P I N I O N**

---

**BEFORE: McKEAGUE, THAPAR, and LARSEN, Circuit Judges.**

**McKEAGUE, Circuit Judge.** William L. Belt was an underground coal miner for 16 years, working last for the Island Creek Coal Company. Belt has since filed three claims for benefits under the Black Lung Benefits Act. He has pressed this third claim before an administrative law judge (ALJ) twice, the Benefits Review Board (Board) twice, and now the Sixth Circuit once. In the current iteration, the ALJ found that Belt was entitled to benefits and the Board affirmed the award. We see no legal errors and hold that the ALJ's findings were supported by substantial evidence. We accordingly **DENY** Island Creek Coal Company's petition for review.

**I**

Belt filed the instant claim on March 12, 2012.  The District Director proposed to award benefits and Island Creek Coal Company (Island Creek) requested a hearing.  The ALJ considered the record, which included the medical opinions of four doctors:  Dr. Baker, Dr. Chavda, Dr. Selby, and Dr. Zaldivar.  Crediting the opinions of Dr. Baker and Dr. Zaldivar on the issue of Belt's total disability, the ALJ awarded Belt benefits.  The Board vacated the award because the Board determined that the ALJ had not made sufficiently specific findings regarding the exertional requirements of Belt's last coal-mine job.  On remand, the ALJ again awarded Belt benefits and the Board affirmed the award.

Island Creek petitions for review of that decision, making three arguments: (1) that the ALJ erred by referencing a regulation that incorporated definitions of exertion levels from the *Dictionary of Occupational Titles* (DOT), and erred by not giving the parties notice of that reference; (2) that the ALJ failed to resolve inconsistent evidence of Belt's cigarette-smoking history; and (3) that Belt's benefits should begin from a 2015 pulmonary function test, not from the 2012 date on which Belt filed his claim.

**II**

Our review in this case is limited to "whether substantial evidence supported the ALJ's decision and whether either the ALJ or the [Board] committed legal error." *Island Creek Coal Co. v. Calloway*, 460 F. App'x 504, 506 (6th Cir. 2012).  The substantial evidence standard requires only evidence that "a reasonable mind might accept as adequate to support a conclusion." *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 633 (6th Cir. 2009) (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)).  In so determining, we ask whether the ALJ gave sufficient reasons for the ALJ's weighing of the evidence. *See id.* at 634.

**III**

Miners qualify for benefits under the Black Lung Benefits Act once they prove four facts: (1) they have pneumoconiosis; (2) their condition arose from their work as a coal miner; (3) they are "totally disabled"; and (4) the "pneumoconiosis contributes to the total disability." *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018) (quoting 20 C.F.R. § 725.202(d)(2)). Pneumoconiosis is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

There are several ways a miner can go about the proof. As relevant here, there's a "rebuttable presumption that [a] miner is totally disabled due to pneumoconiosis" if the miner worked for more than 15 years in an underground coal mine and "other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4); *see* 20 C.F.R. § 718.305. A miner is totally disabled if the miner's impairment, "standing alone, prevents . . . the miner" from doing their "usual coal mine work" or comparable work. 20 C.F.R. § 718.204(b)(1). A miner can prove they are prevented from doing their usual coal-mine work with pulmonary function tests or arterial blood-gas tests that meet certain objective results (qualifying tests). *Id.* at § 718.204(b)(2)(i), (ii). Or a miner can so prove with "reasoned medical judgment[s]" of physicians, even when the medical tests are non-qualifying. *Id.* at 718.204(b)(2)(iv).

Once the presumption applies, employers may rebut it. The presumption is rebuttable "by establishing that (A) [the] miner does not . . . have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4). "An employer rebuts the presumption of legal pneumoconiosis by showing

that a miner's coal-mine employment did not contribute, even in part, to his pneumoconiosis." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 406–07 (6th Cir. 2020); *see* 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(d)(1)(ii).

## IV

Here, the ALJ determined that Belt was entitled to the presumption of pneumoconiosis. Belt accrued 16 years of qualifying work, the ALJ found, and Dr. Baker's and Dr. Zaldivar's medical opinions, as well as Belt's most recent (non-qualifying) pulmonary function test, showed that Belt is totally disabled. As necessary to apply the rebuttable presumption, the ALJ found that Belt couldn't do the usual coal-mine work of his last job. The ALJ also found that Island Creek did not rebut the presumption despite Belt's smoking history and that Belt was entitled to benefits as of the filing of his claim. We will address Island Creek's challenge to each finding in turn.

### 1. Total-disability finding

To determine whether a miner could do their usual work, an ALJ must "compare the exertional requirements of th[e] coal mine employment with the physician's assessment of [the miner's] working capability." *Onderko v. Dir., OWCP*, 14 Black Lung Rep. 1-2 (Ben. Rev. Bd. 1989). The Board vacated the ALJ's finding because the ALJ "did not make a specific finding as to the exertional demands of [Belt]'s usual coal mine work, e.g., mild, moderate or heavy labor, and compare those exertional demands with the opinions of Drs. Baker and Zaldivar." The question is whether the ALJ adequately followed the Board's instruction.

Island Creek raises two arguments on this score: (1) that the ALJ erred by using the DOT as a definitional tool regarding exertion levels, without notice prior to the decision, and (2) that the findings were not supported by substantial evidence.

A. *Use of the Dictionary of Occupational Titles*

There are several ways to analyze this issue. None afford Island Creek relief.

    i.    <u>Island Creek forfeited the notice argument by not raising the issue in its opening brief to the Board.</u>

Island Creek argues obliquely that the ALJ erred by not affording Island Creek "adequate opportunity to show the contrary of the matter noticed." 29 C.F.R. § 18.84. But Island Creek did not raise that issue to the Board when Island Creek appealed the ALJ's decision. Instead, Island Creek argued that the "[u]se of sources such as the *Dictionary of Occupational Titles* or applying a regulation drawn from another program to draw conclusions is error of law."

We review only the Board's orders, not the ALJ's. *See* 33 U.S.C. § 921(c). "Unsurprisingly, then, our decades-long precedent has refused to consider issues that parties failed to present to the Board." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 750 (6th Cir. 2019) (collecting cases). Any notice argument is therefore forfeited.[1]

---

[1] If the argument were not forfeited, Island Creek would still not win remand on this issue. Here, the ALJ put the reference to 20 C.F.R. § 404.1567 in his order, which was expressly allowed by the previous notice regulation. *See* 29 C.F.R. § 18.45 (2014). Under that regulation, when an ALJ took notice of a fact in an order, a party still had the requisite "adequate opportunity" to contest the fact by way of a motion for reconsideration. *See Maddaleni v. The Pittsburgh & Midway Coal Mining Co.*, 14 Black Lung Rep. 1-135 (Ben. Rev. Board 1990).

    The regulatory framework has changed, including the notice provision. The new provision does not expressly allow notice to be taken in a decision, but still requires only an "adequate opportunity to show the contrary of the matter noticed." *See* 29 C.F.R. § 18.84; *see also* 5 U.S.C. § 556(e). "Adequate opportunity" is undefined by the regulation, the Department of Labor did not indicate a definition during rule-making, Rules of Practice and Procedure for Administrative Hearings Before the Office of Administrative Law Judges, 80 Fed. Reg. 28,782 (May 19, 2015), and motions for reconsideration are still available, 29 C.F.R. § 18.93. Island Creek made no such motion here, so it squandered that opportunity.

    But it's worth noting that, under the new regulation, the Board has at times indicated that parties need a formal opportunity to respond to notice of the DOT. *Wright v. Consol of Ky., Inc.*, No. 18-0114, 2019 WL 1075367, at *3 & nn.5–6 (Ben. Rev. Bd. Feb. 13, 2019) (noting that employer would have opportunity to address official notice on remand); *Cajeira v. Kinder Morgan Liquid Terminal*, No. 17-0366, 2018 WL 802078, at *4 & n.5 (Ben. Rev. Bd. Jan. 29, 2018) ("[S]hould the administrative law judge on remand take administrative notice of the DOT, the parties must be provided with an opportunity to respond to that text."); *Bowman v. Fluor Daniel Corp.*, No. 15-0364, 2017 WL 815146, at *4 (Ben. Rev. Bd. Jan. 11, 2017) ("[The ALJ] is advised to notify the parties beforehand and to give them an opportunity to respond."). And that seems to have been the best practice before the new regulation too. *Stewart v. Performance Coal Co.*, No. 15-0081, 2015 WL 13696678, at *3 n.6 (Ben. Rev. Bd. Dec. 23, 2015)

  ii.  <u>Reference to 20 C.F.R. § 404.1567 was not legal error.</u>

An ALJ's use of the *Dictionary of Occupational Titles* (DOT) is sometimes error, but not always. The DOT comes into play when an ALJ is trying to determine if a miner is "totally disabled" by finding whether the miner can do his "usual coal mine employment." 20 C.F.R. § 718.204(b). That determination usually involves comparing the miner's testimony about their last job with the medical-opinion testimony about the miner's current capabilities. *E.g.*, *Simco Peabody Coal Co. v. Dir., OWCP*, 630 F. App'x 447, 458 (6th Cir. 2015); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 713 (6th Cir. 2002). And it's the miner's burden to establish what the exertional requirements of his last job were. *Cregger v. U.S. Steel Corp.*, 6 Black Lung Rep. 1-1219 (Ben. Rev. Bd. 1984). So what happens when an ALJ does not know enough about what the miner's previous job entailed?

In that case, litigants and ALJs sometimes reach for the DOT. In so reaching, they use the DOT as affirmative evidence of what a miner's job duties were—that's where the issues arise. *See Snorton v. Zeigler Coal Co.*, 9 Black Lung Rep. 1-106 (Ben. Rev. Bd. 1986) ("Relying solely upon the [DOT], the [ALJ] found that claimant's usual coal mine employment as general laborer required heavy work involving frequent lifting and carrying of heavy objects . . . ."). That's why an ALJ must take notice of the DOT when using it "to determine the exertional requirements of the miner's usual coal mine employment," for example when "there is no alternative method for establishing" the requirements because "the miner is deceased." *Onderko*, 14 Black Lung Rep. 1-2; *see Westmoreland Coal Co., Inc. v. Powers*, 978 F.2d 1257, 1992 WL 312193, at *3 n.1 (4th

---

("[T]he administrative law judge specifically advised the parties that they had '25 days from the date of the issuance of this Decision to contest taking notice' of the DOT.").

But even under the new regulation, ALJs are still taking official notice in decisions. *See, e.g.*, *Broach v. Taggart Glob.*, No. 17-0335, 2018 WL 1705045, at *4 n.11 (Ben. Rev. Bd. March 28, 2018). Perhaps the ALJ's lack of notice was not the best practice, but it was not legal error. *See Maddaleni*, 14 Black Lung Rep. 1-135.

Cir. 1992) (unpublished table decision) (using the DOT to assess what the claimant's duties were). ALJs use the DOT's job descriptions like this with some regularity.[2]

But that's not what the ALJ here did. The ALJ did not use the DOT's job descriptions as affirmative evidence of what Belt's job duties were. Instead, perhaps spurred by the Board's remand order to make specific factual findings regarding exertional demands, "e.g., mild, moderate or heavy labor," the ALJ used 20 C.F.R. § 404.1567. That regulation specifically defines "light work," "medium work," and "heavy work" with "the same meaning as they have in the [DOT]." 20 C.F.R. § 404.1567. The ALJ then made specific factual findings about Belt's work and matched them to "medium work" and "heavy work" as defined in the regulation. The ALJ next made specific factual findings about the medical opinions regarding Belt's physical capabilities and matched these findings to medium and heavy labor.[3] *See, e.g.*, *Traylor v. Andalex Res., Inc.*, 2017 WL 1103799, at *4 (Ben. Rev. Bd. March 20, 2017). Because what Belt could no longer do matched his usual coal-mine work, the ALJ found Belt to be totally disabled.

Thus the Board correctly recognized that the ALJ "did not use any judicially-noticed facts to determine claimant's capability of working from a respiratory or pulmonary standpoint. His use of a combination of lay evidence concerning claimant's job duties and medical evidence concerning claimant's ability to perform those duties comports with the law." The ALJ did not commit legal error.[4] *See Rockwood Cas. Ins. Co. v. Dir., OWCP*, 917 F.3d 1198, 1209 (10th Cir.

---

[2] *See, e.g.*, *Gray v. Powell Constr. Co.*, No. 17-0258, 2018 WL 1705021, at *5 & n.11 (Ben. Rev. Bd. March 28, 2018); *Mosley v. Liberty Mut. Ins. Co.*, No. 17-0261, 2018 WL 1292744, at *3 n.9 (Ben. Rev. Bd. Feb. 28, 2018); *Heatherington v. Consol Energy, Inc.*, No. 16-0301, 2017 WL 1279622, at *3 (Ben. Rev. Bd. Mar. 16, 2017) (faulting claimant for failing to move for notice of DOT); *Samons v. Nat'l Mines Corp.*, Nos. 15-0497, 15-0500, 2016 WL 8260745, at *5 (directing the ALJ to consider taking notice of DOT on remand because claimant was deceased) (Ben. Rev. Bd. July 26, 2016); *Stewart*, 2015 WL 13696678, at *3.

[3] The same, or similar, definitions for exertion levels were used by the doctors as a short-hand in their testimonies too.

[4] To be clear, we do not hold that an ALJ never has to take notice of the DOT or a related regulation. Even in the same context, other ALJs using the DOT in a similar manner have still taken notice, which may be the best practice.

2019). And by the same logic,[5] any use of the regulation (and the lack of notice) was harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (requiring claimant of error to show prejudice); *Dixie Fuel Co., LLC v. Dir., OWCP*, 820 F.3d 833, 843 (6th Cir. 2016) (applying harmless-error analysis to a Black Lung benefits claim).

### B. The total-disability finding was supported by substantial evidence.

Island Creek challenges the Board's affirmance of the ALJ's total-disability findings. In particular, Island Creek challenges both the finding that Belt's prior work required medium and heavy exertion and the finding that Belt could not do work requiring medium and heavy exertion.

Island Creek takes issue with the ALJ's crediting of Dr. Baker's opinion because Dr. Baker relied only on non-qualifying pulmonary function tests. But Island Creek does not support its position with any case law and its position is contradicted by the relevant regulation. The regulation specifically allows the ALJ to find a miner totally disabled despite non-qualifying tests. *See* 20 C.F.R. § 718.204(b)(2)(iv); *Wilkerson*, 910 F.3d at 258; *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 577 (6th Cir. 2000). Non-qualifying tests are not dispositive but can still be relevant.

---

*Hauber v. Energy W. Mining Co.*, No. 18-0184, 2019 WL 1569513, at *2 (Ben. Rev. Bd. Mar. 12, 2019) (giving notice that the ALJ would use the DOT's exertional requirement definitions at the hearing).

But whether notice of a fact is necessary turns on how the ALJ uses it. *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("[W]hether a fact is adjudicative or legislative depends upon the manner in which it is used."); *cf. Harman Mining Co. v. Dir., OWCP*, 678 F.3d 305, 316 (6th Cir. 2012) ("The APA does not provide that public law documents, like the [Black Lung Benefits] Act, the regulations, and the preamble, need be made part of the administrative record."). *See generally* 21B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 5103.1 (2d ed. Oct. 2020 update) (describing judicial notice).

[5] The fact that the ALJ used the regulation as an intermediary definitional tool does not negate the match between the two groups of findings. Put another way, it's the transitive property. If A = B = C, then A = C and the excision of B doesn't change that. In the same way, the excision of the ALJ's use of the regulation does not change his ultimate conclusion.

Island Creek also argues that the record only supports a finding that Belt's job required light work, and that Dr. Baker and Dr. Zaldivar opined that Belt was unable to do medium and heavy work. The ALJ's findings to the contrary were supported by substantial evidence.

The ALJ found that Belt had to do medium and heavy work. Medium work is lifting no more than 50 pounds but frequently lifting or carrying 25 pounds. According to Belt's claims and testimony, his main job at the end of his tenure was a cutting machine operator. In that position, among other duties, he helped carry 60–70 boxes of drill bits 10–12 times day. Each box weighed 12 pounds and he carried two at a time. And he wore a 10–12 pound tool belt. So by carrying around 30 pounds frequently, he did medium work—Island Creek does not persuasively dispute this finding.

Belt also did occasional heavy work, the ALJ found. Heavy work is lifting no more than 100 pounds but frequently lifting or carrying 50 pounds. Belt's claims showed that he filled in at other positions which required him to lift machine cables and timbers that were heavier than 50 pounds. The ALJ credited Dr. Baker's and Dr. Chavda's reports that supported the heavy-work finding. Again, Island Creek fails to persuasively show that these findings were not supported by substantial evidence.

The ALJ permissibly matched Belt's previous duties with what the doctors said Belt could no longer do. Dr. Baker testified that Belt would only be able to do sedentary work and would not be able to do any work where he had to routinely lift 20 pounds or more. And the ALJ credited Dr. Baker's opinion the most because Dr. Baker's opinion comported with Belt's most-recent pulmonary function test. The ALJ also credited Dr. Zaldivar's opinion that Belt couldn't do heavy work.

We hold that the ALJ's total-disability finding was supported by substantial evidence. Island Creek's argument boils down to the conclusion that Belt did not do medium or heavy labor. But Island Creek doesn't show us how to get to that conclusion without reweighing, or disregarding, the evidence. *See Big Brand Res., Inc v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013). And even if the finding that Belt did heavy work was erroneous, the ALJ's finding that Belt's job required medium work, which he could no longer do, is a sufficient basis to affirm.

### 2. Smoking-history finding

Island Creek argues that the ALJ violated the Administrative Procedure Act (APA) by failing to resolve conflicting evidence about how long Belt smoked when the ALJ determined that Island Creek did not rebut the presumption of legal pneumoconiosis.[6] *See* 5 U.S.C. § 557(c)(3)(A).

There was conflicting evidence about Belt's smoking habits. At the hearing, Belt testified that he smoked intermittently for about 12 years, denying he had told various medical providers otherwise. But he told Dr. Chavda that he had smoked for 35 years ending in 2007, Dr. Selby's examination in 2012 showed that Belt was a current smoker, test results from 2013 showed Belt was a current smoker, and notes from a 2010 hospital visit recorded that Belt had smoked for 50 years.

The ALJ neither left the smoking history unresolved, nor resolved the smoking history without reason. He enumerated all of the dissimilar evidence of Belt's smoking history, the same evidence laid out by Island Creek's briefing. He then discredited Belt's hearing testimony, instead

---

[6] Island Creek argues in reply that Belt forfeited any position on this argument by failing to address it. But, of course, an appellee's forfeiture of an argument "does not bind us." *Talmer Bank & Tr. v. Minton Firm, P.C.*, 660 F. App'x 439, 446 n.5 (6th Cir. 2016). Belt's counsel would be well-served to remember to address each argument an appellant makes clearly and thoroughly. But we decline to consider Belt to be position-less on this issue, as a contrary holding would mandate remand even when remand would be pointless. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001) (listing a pointless remand as a reason to address forfeited argument); *cf. Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (whether to address an argument is a matter of discretion).

crediting what Belt told Dr. Chavda (35 years) and Dr. Selby's examination (still smoking in 2012). The ALJ thus concluded that Belt's smoking history "appears to be at least 35 years" and that Belt was still smoking as of at least 2012.

We've previously held, when considering a similar § 557(c)(3)(A) claim, that "there is no case law stating that an [ALJ] must make a specific finding as to the number of years a benefits claimant has smoked." *Grayson Coal & Stone Co., Inc. v. Teague*, 688 F. App'x 331, 335 (6th Cir. 2017); *cf. Jericol*, 301 F.3d at 713 (noting that ALJs may resolve evidentiary discrepancies implicitly). In that case, the ALJ reviewed a contradictory smoking history that ranged from 25 to 50 years and then concluded only that the claimant smoked "for a substantial amount of time." *Id.* at 335. We held that to be enough for the APA. *See id.* Here, then, the ALJ did more than the APA requires in resolving conflicting evidence of smoking history.

The ALJ's resolution of the smoking history evidence was reasonable. Island Creek argues that the ALJ's rationale that Belt would have no reason to exaggerate his smoking history to Dr. Chavda "fails to account for Mr. Belt's misleading testimony." To Island Creek, "[r]easonable minds cannot disagree" that "Mr. Belt downplayed his cigarette smoking history." But the ALJ did exactly for what Island Creek advocates. The ALJ already discredited Belt's testimony and instead credited the various doctors' reports in finding that Belt smoked at least 35 years rather than the 12 years to which he testified.

This brings us to Island Creek's main argument on this issue—that the ALJ erred by not affording the opinions of Dr. Selby and Dr. Zaldivar more weight because they are closer in-line with Belt's true smoking history. That argument fails, if not because it asks us to reweigh the evidence, because it's based on the false premises that the ALJ did not find a specific smoking history and that Dr. Selby's and Dr. Zaldivar's opinions were based on a different history.

And Island Creek misses the point. To rebut the presumption of legal pneumoconiosis, Island Creek needed to "show[] that [Belt]'s coal-mine employment did not contribute, even in part, to his pneumoconiosis." *Young*, 947 F.3d at 406–07 (citing *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 599–601 (6th Cir. 2014)).

The Board correctly determined that the ALJ permissibly discounted Dr. Selby's and Dr. Zaldivar's opinions because they failed to explain how smoking and coal-mine work could not have additive effects. *See* 20 C.F.R. § 718.201(b); Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79,940; *Young*, 947 F.3d at 408 ("We routinely uphold the rejection of testimony on credibility grounds where the testimony offers a medical opinion that conflicts with these regulations."); *Quarto Mining Co. v. Dir., OWCP*, 657 F. App'x 428, 433 (6th Cir. 2016); *Brandywine Explosives & Supply v. Dir., OWCP*, 790 F.3d 657, 668 (6th Cir. 2015) (affirming the discrediting of medical opinions for "ignoring the possibility" that smoking and coal dust exposure have additive effects). So remanding for a new smoking-history finding would not get Island Creek what it wants. Neither doctor demonstrated why Belt's disability was unrelated to coal-dust exposure, and a finding that Belt smoked more than 35 years would not change that.

### 3. Disability-onset finding

Lastly, Island Creek argues that Belt's benefits, if granted, should begin in 2015 instead of 2012. A miner receives benefits from the "the month of onset of total disability," but "[w]here the evidence does not establish the month of onset, benefits" start from the date of the claim. 20 C.F.R. § 725.503(b); *see Younghiogheny & Ohio Coal Co. v. Pickana*, 117 F.3d 1421, 1997 WL 376958, at *5 (6th Cir. 1997) (unpublished table decision). "Medical evidence of total disability does not establish the onset date of disability; rather, it is merely indicative that claimant became totally

disabled at some time prior to that date." *Owens v. Jewell Smokeless Coal Corp.*, 14 Black Lung Rep. 1-47 (Ben. Rev. Bd. June 29, 1990).

The ALJ found that "[n]o physician of record expressed an opinion" as to when Belt became disabled and found no evidence in the record indicative of a "precipitous decline" from which a date of disability could be inferred. The Board affirmed that finding.

Island Creek argues that substantial evidence did not support the finding that there was no record evidence of when Belt became totally disabled. An ALJ must determine "if any credible evidence establishes the miner was not totally disabled subsequent to the filing date of his claim." *Chappell v. Whitaker Coal Corp.*, No. 19-0168, 2020 WL 2836120, at *8 (Ben. Rev. Bd. Apr. 28, 2020). To prevail Island Creek must thus show "affirmative evidence of the absence of disability after [Belt] filed his application for benefits." *Hatfield v. Dir., OWCP*, 31 F. App'x 803, 804 (4th Cir. 2002).

To that end, Island Creek points to record evidence: (1) that the ALJ credited Dr. Zaldivar's statement that Belt "showed no significant disability until he was seen by Dr. Baker in June 2015"; (2) that Dr. Selby opined that pulmonary function tests in 2012 and 2013 showed that Belt could do heavy labor; and (3) that, generally speaking, the ALJ's decision was predicated on the fact that only the 2015 pulmonary function test demonstrated total disability—earlier pulmonary and arterial tests did not.

No evidence to which Island Creek points establishes that the ALJ's contrary conclusion was not supported by substantial evidence. Dr. Zaldivar's statement that "[Belt] showed no significant disability" is not sufficient to show that Belt was not totally disabled per the regulations. In this context, the question is whether Belt could do his usual coal-mine job and "even a 'mild'

respiratory impairment may preclude the performance of the miner's usual duties, depending on the exertional requirements." *Cornett*, 227 F.3d at 578.

Here, the ALJ found Belt's usual duties included medium work as he frequently carried 20–30 pounds. Dr. Zaldivar's statement, even if construed as affirmative evidence of non-total-disability (rather than as a note of the lack of evidence the other way), related specifically to Belt's ability to do heavy labor. Thus Dr. Zaldivar's statement does not disprove the ALJ's onset finding. Island Creek's reliance on Dr. Selby's similar statements is likewise misplaced.

And Island Creek can't rely on test results which did not prove total disability to prove a lack of total disability. The Board has recently reiterated that "non-qualifying pulmonary function studies alone do not establish the absence of disability." *Tackett v. White Cnty. Coal*, No. 19-0176, 2020 WL 1133055, at *5 (Ben. Rev. Bd. Feb. 27, 2020) (citing, *inter alia*, *Cornett*, 227 F.3d at 577); *see Hilton v. C & N Mining, LLC*, No. 17-0524, 2018 WL 4357388, at *5 (Ben. Rev. Bd. Aug. 15, 2018) ("[T]he fact that claimant had non-qualifying blood gas results before June 2016, does not, in and of itself, establish that he was not totally disabled at that time."). And this conclusion is drawn from the regulatory framework. Under 20 C.F.R. § 718.204(b)(2)(iv), a miner can prove total disability without qualifying test results; as a corollary, non-qualifying test results do not prove a miner is not totally disabled.

The ALJ's finding that the record did not show an onset month was reasonable. None of Island Creek's evidence points to a particular month that Belt became disabled, *Bomboris v. Youghiogheny & Ohio Coal Co.*, 810 F.2d 199, 1986 WL 18407, at *2 (6th Cir. 1986) (unpublished table decision), and no credited medical opinion definitively concluded that Belt could have done all of his usual coal-mine duties on a date subsequent to the claim's filing. Asking whether the record could support the ALJ's conclusion, not whether we would have concluded the same, we

hold that it could. *Kolesar*, 760 F.2d at 729. We accordingly hold that the ALJ's finding that the record "does not establish the month of onset" was supported by substantial evidence. 20 C.F.R. § 725.503(b).

**V**

The petition for review is **DENIED**.